In re FIRSTCENT SHOPPING CENTER, INC. and Center Plaza Corp., Appellants. (Two Cases)

Nos. 91 Civ. 4042 (KTD), 91 Civ. 5745 (KTD).

United States District Court, S.D. New York.

March 19, 1992.

Shaw, Licitra, Esernio & Schwartz, P.C., Garden City, N.Y., for appellants; Edward J. LoBello, of counsel.

Kelley Drye & Warren, New York City, for appellee N.W. Commercial Mortgage Corp.; Arnold S. Klein, Joseph A. Boyle, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Appellants, Firstcent Shopping Center, Inc. and Center Plaza Corp. (together, "Debtors") appeal to this court, pursuant to 28 U.S.C. § 158(a), from two orders of the United States Bankruptcy Court for the Southern District of New York (the "bankruptcy court" or "the court"). On June 13, 1991, Debtors filed a Notice of Appeal from an order, dated May 24, and entered on June 3, 1991 (the "June 3 Order"), which, *inter alia,* denied Debtors' motion for additional time to confirm a plan of reorganization, converted Debtors' Chapter 11 reorganization proceedings to Chapter 7 liquidation proceedings, and modified the auto-

matic stay to allow the pre-petition foreclosure action of Appellee N.W. Commercial Mortgage Corporation ("N.W.") to proceed. On July 8, 1991, Debtors filed a Notice of Appeal from an order, dated June 22, 1991 (the "June 22 Order"), denying Debtors' motion for a temporary restraining order and request for reargument of the June 3 Order. By Stipulation and Order filed September 13, 1991, I ordered the two appeals consolidated for the purposes of argument and determination.

## FACTS

The Debtors owned and operated a shopping center called the Centereach Mall, located in Centereach, New York (the "Mall"). N.W. is the Debtors' principal secured creditor. The debt is secured by N.W's valid and perfected first lien on the Mall. N.W. commenced foreclosure proceedings in New York State Supreme Court on March 27, 1990, alleging that Debtors had failed to pay real property taxes and had not made a payment on their debt since June, 1989. On May 11, 1990, Debtors filed separate voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* These bankruptcies stayed the foreclosure proceedings. As of the filing date of their petitions, the Debtors owed N.W. $34,923,091.95 in unpaid principal and accrued interest.

On October 2, 1990, N.W. moved, pursuant to 11 U.S.C. § 362, for relief from the automatic stay.[1] On November 13, 1990, a bankruptcy judge heard argument on N.W.'s motion and suggested settlement terms. *See* Minutes dated 11/13/90. These suggestions were memorialized in the January Stipulation.[2] The January Stipulation provided that Debtors would pay certain taxes and further stated, *inter alia,* that: (1) a hearing would be held on

---

1. N.W.'s motion was "based, among other things, on the Debtors' failure to pay pre-petition property taxes on the Mall for the 1988–1989 tax year, the sale of the tax lien on the property on December 4, 1989, and the expiration of the redemption period on December 4, 1990." Stipulation and Order Concerning Relief from the Automatic Stay, dated 1/10/91 (the "January Stipulation") at 1.

2. N.W. argues that "[t]he delay between the November 13 hearing and the entry of the stipulation and order on January 10 was largely due to [Debtors'] unilateral failure to deliver the signed stipulation and order to the court." Brief of Appellee (91 Civ. 4042) at 5.

March 14, 1991 for the purposes of valuing N.W.'s secured claim; (2) Debtors would have until May 27, 1991 to confirm a plan of reorganization; and, (3) if Debtors failed to meet the May 27, 1991 deadline: (a) the automatic stay would immediately be lifted in part, without further action by the court; (b) Debtors' cases would be converted to Chapter 7 cases; and (c) N.W. could continue its foreclosure action against the Mall. January Stipulation at ¶¶ 6–7.

By motion dated February 11, 1991, Debtors moved for (1) a § 506 valuation hearing to determine the value of N.W.'s secured claim; and, (2) a 30–day extension of the January Stipulation's May 27, 1991 deadline to confirm a plan of reorganization. In support of their request for a valuation proceeding, Debtors pointed out that the parties had obtained divergent appraisals regarding the fair market value of the Mall.[3] Debtors contended that N.W. intended to foreclose on, and take title to, the Mall so that they could sell it when the real estate market improved. Fixing the amount of N.W.'s secured claim, they argued, would prevent N.W. from "parlaying" its secured claim into a windfall. Debtors' Application at 4–6.

N.W. opposed the motion to modify arguing that: (1) the $27 million appraisal that N.W. obtained was an appropriate basis for establishing the value of N.W.'s secured claim; (2) the 30–day extension was not necessary because Debtors did not need to have N.W.'s claim valued before they could file a plan of reorganization; and, (3) the requested extension would deprive N.W. of the benefit of its bargain with Debtors, because the January Stipulation allowed Debtors additional time to confirm a plan in exchange for a fixed deadline for plan confirmation. N.W.'s Valuation Hearing Memorandum and Memorandum in Opposition to Debtors' Request for Extension of Confirmation Deadline.

During the May 21, 1991 hearing on this motion[4], Debtors argued that they could confirm a plan within 30 to 60 days due to the increased cash flow expected from the resolution of a dispute with the Mall's anchor tenant. The Debtors also argued that a plan could be confirmed by separately classifying the unsecured portion of N.W.'s claim and the unsecured claims of other creditors, and then cramming down the plan, over the objections of N.W., on the unsecured portion of N.W.'s claim. Minutes dated 5/21/91.

In denying Debtors' motion, the bankruptcy court stated:

I don't believe that the Debtor can confirm a plan, I don't believe that even if the case law supports the position of the Debtor and that case law is always tenuous at best as to a separate classification of the deficiency in reference to the secured claim, I don't believe that you would be able to cram this matter down.... there is insufficient money even to cramdown the maximum value of the banks, whatever their interest here, even if I go with the most. There is just insufficient funds here. This Debtor

---

3. Section 506 of the Bankruptcy Code provides that a creditor has a secured claim to the extent of the value of the collateral. 11 U.S.C. § 506(a); *In re Klein*, 10 B.R. 657, 659 (Bankr. E.D.N.Y.1981). Debtors alleged that the fair market value of the Mall was approximately $20 million, while N.W. valued the Mall at approximately $27 million. [Debtors'] Application for Determination of Value of Lender's Secured Claim ("Debtors' Application") at 4–5.

4. According to Debtors, circumstances beyond their control frustrated their attempts to schedule a valuation hearing. The valuation hearing was originally scheduled by Judge Buschman for March 14, 1991. Sometime prior to that date, Judge Buschman resigned from the bench. The cases were subsequently reassigned to the Honorable James A. Goodman, a Bankruptcy Judge sitting, by designation, in the Southern District of New York. On March 14, 1991, Judge Goodman rescheduled the valuation proceeding to May 2, 1991, at which time the hearing was again adjourned, to May 21, 1991. On that date, the parties were advised that Judge Goodman's tenure as a visiting Judge had ended and that the matter was now assigned to Judge Francis G. Conrad, a Bankruptcy Judge for the District of Vermont, sitting in the Southern District of New York by designation. Judge Conrad presided over the May 21 hearing, and subsequently issued the June 3 Order. Brief of Appellants (91 Civ. 4042) at 6–7.

N.W. asserts that Debtors agreed to both the March 14 and May 2 adjournments in order to pursue a negotiated settlement. Brief of Appellee (91 Civ. 4042) at 6.

probably should be converted and the way it's going to be converted is I am just going to let the motion continue to its conversion date.... I deny the motion to continue the conversion date.

*Id.* at 31–32.[5]

On June 3, 1991, the court entered an order: (1) denying Debtors' motion; (2) converting the cases to Chapter 7 cases, pursuant to the January Stipulation, as of May 27, 1991; and, (3) lifting the automatic stay to allow N.W. to proceed with its foreclosure action on the Mall. June 3 Order.

On June 11, 1991, Debtors, by Order to Show Cause, moved for reargument of the June 3 Order. In support of their application, Debtors set forth the following documentary evidence regarding the Mall: (a) three new, fully executed leases; (b) three new leases, nearly finalized; (c) two letters of intent to lease space; (d) a revised lease; and, (e) other information regarding potential tax reductions and prospective tenants. Debtors asserted that, taken together, the new developments would result in a dramatic increase in rental income at the Mall, allowing them to service their debt to N.W. [Debtors'] Order to Show Cause Granting Temporary Restraining Order and Scheduling Hearing on Debtors' Reargument.

In its June 22 Order denying reargument, the court found that the new leases did not "significantly increase the rental income," that the offer of proof as to prospective tenants was "too speculative," and that, given Debtors' lack of equity in the Mall, there was not "a reasonable prospect of reorganization within a reasonable period of time." June 22 Order at ¶¶ 2–4.

## ARGUMENTS ON APPEAL

The parties disagree as to the applicable standard of review of the bankruptcy court's orders. Concerning their appeal of the June 3 Order, Debtors argue that the court's interpretation of the January Stipulation is a question of law and subject to *de*

*novo* review by this court, and that an "abuse of discretion" standard applies to the court's refusal to grant an extension of time to confirm a plan. Concerning their appeal of the June 22 Order, Debtors argue that this court can set aside findings of fact that are "clearly erroneous." N.W. argues, and I agree, that both orders are governed by an "abuse of discretion" standard. Consequently, this court must determine whether the court abused its discretion in its June 3 and June 22 Orders.

Concerning the merits of their appeal of the June 3 Order, Debtors argue that the court misinterpreted the January Stipulation by failing to construe the provision setting a valuation hearing as a condition precedent to Debtors' obligation to confirm a plan of reorganization. They claim that, on its face, the January Stipulation required a valuation of N.W.'s secured claim before Debtors would be obligated to confirm a plan. Debtors further argue that, even if the valuation hearing was not a condition precedent to their obligation to confirm, the court abused its discretion because the valuation of N.W.'s secured claim was indispensable to Debtors' ability to confirm a plan of reorganization. Brief of Appellants (91 Civ. 4042) at 8–13.

As to their appeal of the June 22 Order, Debtors argue that the order should be reversed because the court erred in finding that the new leases were too speculative and that Debtors did not have a reasonable prospect of reorganization within a reasonable period of time. Specifically, they argue that the court's rejection of their uncontroverted documentary evidence establishing future increases in rental income, was clearly erroneous.

Responding to Debtors' assertions about the June 3 Order, N.W. argues that: (1) this court lacks subject matter jurisdiction over the instant appeal because the June 3 Order was interlocutory, as opposed to final; (2) Debtors are precluded from arguing on appeal that the valuation of N.W.'s

---

**5.** The judge did not explicitly rule on the motion for a valuation proceeding, and did not determine the value of N.W.'s secured claim. At no time during the hearing, and at no point in their supporting papers, did Debtors argue that the valuation proceeding was a condition precedent to the filing of a plan or of a confirmation of that plan.

secured claim was a condition precedent to their obligation to confirm a plan because they did not argue it before the bankruptcy court; (3) the bankruptcy court did not abuse its discretion in refusing to extend the time to confirm; and, (4) the instant appeal is moot because the requested extension of time would have expired on June 27, 1991.

As to the June 22 Order, N.W. asserts that the court did not, as Debtors allege, reject the new evidence proffered by Debtors. Rather, N.W. argues, the court concluded, after due consideration, that the new evidence was too speculative to affect the outcome of the June 3 Order. Under these circumstances, N.W. continues, Debtors have failed to demonstrate that the court abused its discretion.

## DISCUSSION

■ In deciding the instant appeal, the threshold issue is whether this court has subject matter jurisdiction over Debtors' appeal of the June 3 Order. Appeals from a bankruptcy court to a district court are governed by 28 U.S.C. § 158(a). That section provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and with leave of the court, from interlocutory orders and decrees, of bankruptcy judges...." Because, under section 158(a), final orders may be appealed as a matter of right, but interlocutory orders may be appealed only with leave of this court, the initial question here is whether the June 3 Order was a final order.

N.W. argues that the June 3 Order disposed only of Debtors' motion for an extension of time. Because orders denying requests for extensions of time are interlocutory, N.W. avers, they cannot be appealed as of right.[6] Debtors assert that the June 3 Order did not simply deny a request for an extension of time, but, rather converted the cases from Chapter 11 reorganizations to Chapter 7 liquidations. Because this conversion was based upon the court's er-

roneous interpretation of the January Stipulation, the June 3 Order, and not the January Stipulation, resulted in the conversion of these cases. As the functional equivalent of a conversion order, Debtors argue, the June 3 Order is a final order and appealable as of right. Alternatively, Debtors argue that their motion was a Rule 60(b) motion to modify the terms of the January Stipulation, the denial of which is reviewable on appeal.

■ The standard for determining whether an order is "final" in bankruptcy proceedings is more flexible than the standard applied in ordinary civil cases. *See In re Chateaugay Corp.*, 922 F.2d 86, 89–90 (2d Cir.1990); *cf. Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (finality of order in civil proceedings generally depends upon whether the order "terminate[s] the entire litigation"). To be deemed final and, therefore, appealable to the district court as of right, a bankruptcy order must resolve a discrete dispute within the larger bankruptcy case. *In re Chateaugay Corp.*, 922 F.2d at 90. The disposition of a discrete dispute "is generally considered to be the resolution of an adversary proceeding within the bankruptcy proceeding." *Id.*

■ The January Stipulation seems to be "self-executing" as it allows for: (a) modification of the automatic stay to permit N.W. to proceed with its foreclosure action; and, (b) conversion to Chapter 7, without further intervention of the court, if Debtors did not confirm a plan of reorganization by May 27, 1991. Nevertheless, although it invoked a provision of the January Stipulation, the June 3 Order did explicitly order modification and conversion. Conversion of a bankruptcy case is final and, therefore, appealable. *See In re Rebeor*, 89 B.R. 314, 320–21 (Bankr.N.D.N.Y.1988) (order converting Chapter 13 to Chapter 7 liquidation was final and appealable since "immediate review was necessary to protect Debtor's substantive rights to reorganize in Chapter 13 and to prevent irreparable harm through the potential loss of his property sold to good faith purchasers").

---

6. N.W. further argues that the appeal of the June 22 motion for reargument should also be dismissed because Fed.R.Bankr.P. 9024 only

permits reargument of final orders. Brief of Appellee (91 Civ. 5745) at 6.

Thus, I deem the June 3 Order final and rule that this court has subject matter jurisdiction over this appeal.

■ Alternatively, I will consider the instant appeal as a motion for leave to appeal an interlocutory order, grant leave to appeal in my discretion, and review the merits of the appeal. *See In re Hooker Invest., Inc.*, 122 B.R. 659, 662–63 (Bankr.S.D.N.Y. 1991) (discussing availability of discretionary review of interlocutory orders of bankruptcy court).[7]

■ Debtors argue that in its June 3 Order, the court misinterpreted of the January Stipulation, because it did not find that the valuation of N.W.'s secured claim was a condition precedent to Debtors' obligation to confirm a plan of reorganization.[8] Presumably, the January Stipulation was drafted by the Debtors and N.W. to be "So Ordered" by Judge Buschman.[9] Debtors point out that the Stipulation states both that the court *"shall"* conduct a valuation hearing on March 14, 1991, and, in the very next paragraph, that Debtors *"shall"* confirm a plan of reorganization by May 27, 1991.[10] Given this language, Debtors argue, the only reasonable interpretation of the January Stipulation is that a valuation hearing must occur prior to the date by which they must confirm a plan of reorganization.

Despite Debtors' assertions, the fact remains that the two clauses which Debtors cite are independent of one another. The January Stipulation does not state that a valuation hearing shall be a necessary predicate to Debtors' obligation to confirm a plan of reorganization. Had the parties meant the valuation hearing to be a condition precedent, they could have drafted the January Stipulation to expressly state just that.[11] The parties having declined to do so, this court will not now read such a condition into the January Stipulation, particularly when the court which "so ordered" it did not feel constrained to interpret the January Stipulation in such a manner.

The minutes of the November 13, 1990 hearing, similarly, do not support Debtors' contention.[12] At that hearing, the bankruptcy judge stated *"if you need* an evaluation [sic] hearing and you can have it in late February or early March." Minutes dated 11/13/90 at 25 (emphasis added). This language does not indicate that the court believed that a valuation hearing was a condition precedent, but merely directs that such a hearing be available should

---

**7.** I further find that this appeal is not moot. If Debtors are correct that the valuation hearing is a condition precedent to their obligation to confirm a plan of reorganization, then the time to confirm a plan will not have lapsed, even though the 30–day extension Debtors sought has since expired.

**8.** Even though the Debtors did not explicitly present this argument to the Court, the argument is presented by the record on appeal. I will, therefore, consider it on appeal. *See In re Hilsen,* 119 B.R. 435, 439 (Bankr.S.D.N.Y.1990) ("A district court sitting in a bankruptcy appeal has the power to consider any issue presented by the record on appeal, even if the issue was not presented to the bankruptcy court").

**9.** Judge Buschman's only modification of the document was to change the scheduled date of the valuation hearing from "February —, 1991 at ____" to "March 14, 1991 at 10:00 a.m." The judge initialed these changes.

**10.** The June 3 Order states:
6. A hearing to value the secured claim of N.W. Commercial Mortgage Corporation shall be held on March 14, 1991 at 10:00 a.m.

**7.** If a plan of reorganization in the above-captioned case shall not have been confirmed on or before May 27, 1991, then the automatic stay shall immediately, and without further action of the court, be modified to permit the Lender [N.W.] to continue its foreclosure action against the Mall, and the Debtors' cases shall be converted to Chapter 7 cases.

**11.** Indeed, N.W. argued throughout the bankruptcy proceeding that Debtors did not need to have N.W.'s claim valued before they could file a plan of reorganization. *See* N.W.'s Valuation Hearing Memorandum and Memorandum in Opposition to Debtors' Request for Extension of Confirmation Deadline at 6–8.

**12.** At that hearing, Judge Buschman suggested the following schedule:
The Debtor confirms a Plan of Reorganization no later than Memorial Day of next year, during which time if you need an evaluation [sic] hearing and you can have it in late February or early March. That will give the Debtor, in my judgment, the time to find out if there is really going to be economic worth to this property.
Minutes dated 11/13/90 at 24.

Debtors desire one. Given these facts, I cannot conclude that the court's denial of Debtors' motion was an abuse of discretion.

■ Debtors next argue that, even if the valuation hearing was not a condition precedent to their obligation to confirm a plan of reorganization, the court abused its discretion by not extending their time to file a plan of reorganization. I cannot agree. The January Stipulation incorporated the suggestions of the court and set a firm timetable for Debtors to confirm a plan of reorganization. In exchange for granting the Debtors until May 27, 1991 to confirm a reorganization plan N.W. withdrew its motion to lift the automatic stay. The bankruptcy judge denied the motion to modify the timing of the confirmation because he did not believe that Debtors could confirm a plan at all. I cannot say that he abused his discretion in reaching this conclusion.

■ Focusing on their appeal of the June 22 Order, Debtors argue that the uncontradicted documentary evidence they submitted in support of their motion to reargue was not "speculative," and clearly established that they could file a plan of reorganization within a reasonable period of time. Consequently, they argue, the factual findings upon which the June 22 Order was based were clearly erroneous.[13]

I find that Debtors have failed to meet their burden of establishing that the court abused its discretion in denying their motion for reargument. I agree with N.W. that the court did not simply reject the proffered new evidence, but specifically found that the evidence did nothing to alter its June 3 Order. Most of the evidence presented appears to be nothing more than mere puffing. The "new leases nearly finalized" and the letters of intent could not be given any weight by the court. Thus, I must agree with the court's conclusion that reargument was not warranted because "Debtors have no equity in the Mall and do not have a reasonable prospect of reorganization within a reasonable period of time." June 22 Order at ¶ 4.[14]

For the foregoing reasons the bankruptcy court's June 3 and June 22 Orders are affirmed.

SO ORDERED.

---

13. Debtors' papers in support of the instant appeal state:

    [t]aken together, the new fully executed leases, the revised lease, the new leases to be executed, and the letters of intent, represented a dramatic prospective reduction in vacant space at the Mall by as much as approximately 103,000 square feet (from 141,127 square feet to approximately 38,250 square feet), and prospective increase in rental income at the Mall by $1,200,000 (from approximately $2,000,000 per year to $3,200,000). Moreover, the cash flow would further be increased by the tax reduction and further rentals. Thus [Debtors] would have sufficient cash (approximately $3,500,000) to service [N.W.'s] debt,

and implement a viable plan of reorganization based thereon.

Brief of Appellants (91 Civ. 5745) at 7–8.

14. The Court found:

    2. The two new leases entered into before May 24, 1991 do not significantly increase the rental income.

    3. The Debtors offer of proof relating to future increases in rental income from the Centereach Mall ... based on letters of intent to enter into leases and other negotiat[ions] is too speculative to justify reconsideration of the May 24 [the June 3] Order.

June 22 Order at ¶¶ 2, 3.

    Further, the court found that Debtors' motion did not comply with the local rules. Id. at ¶ 5.