FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: JON G. ROSSON,
                              *Debtor,*

JON G. ROSSON,
                              *Appellant,*

            v.

K MICHAEL FITZGERALD, Chapter
13 Trustee; JAMES RIGBY; UNITED
STATES INTERNAL REVENUE SERVICE;
THOMAS STONE, Jr.; 925 PIKE
STREET BUILDING CORP; NEW
CENTURY MORTGAGE CORPORATION;
MUNDT MACGREGOR LLP,
                              *Appellees.*

No. 06-35724

D.C. No.
CV-05-01842-JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
March 13, 2008—Seattle, Washington

Filed September 24, 2008

Before: Betty B. Fletcher and Richard A. Paez,
Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge Paez

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

13543

**COUNSEL**

Rod McCarvel, Seattle, Washington, for the debtor-appellant.

David A. Gebben (argued), McCarty & Gebben, Bellevue, Washington; Bruce P. Kriegman, Bruce Kriegman Law Office, Seattle, Washington, for the appellees.

**OPINION**

PAEZ, Circuit Judge:

Unable to pay his debts, appellant Jon G. Rosson filed a voluntary petition for protection under Chapter 13 of the Bankruptcy Code. For almost a year, Rosson assured the court and his creditors that he would soon be receiving several hundred thousand dollars in an arbitration award, and that he

would use that money to fund his proposed Chapter 13 plan. When the money finally came in, however, Rosson failed to deliver it to the Chapter 13 Trustee as the bankruptcy court had ordered him to do. Upon discovering that the arbitration proceeds had not been delivered to the Trustee, the bankruptcy court found that Rosson was "rebelliously" "horsing around" with estate assets and, on its own motion, converted the Chapter 13 case to one under Chapter 7. Before the court filed the formal conversion order, Rosson invoked his right to voluntarily dismiss his Chapter 13 petition under 11 U.S.C. § 1307(b). The bankruptcy court denied the request for dismissal and converted the case.

Relying on a holding from the Bankruptcy Appellate Panel, *see Beatty v. Traub* (*In re Beatty*), 162 B.R. 853 (B.A.P. 9th Cir. 1994), Rosson brought this appeal asserting that § 1307(b) afforded him an "absolute" right to voluntarily dismiss his Chapter 13 case at any time prior to the filing of a conversion order, and that the bankruptcy court therefore abused its discretion by denying his request for dismissal. We write to clarify that, after *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105 (2007), a debtor's right to voluntarily dismiss a Chapter 13 case under § 1307(b) is *not* absolute, but is qualified by an implied exception for bad-faith conduct or abuse of the bankruptcy process. The bankruptcy court did not clearly err in finding bad-faith conduct here. Moreover, although the bankruptcy court failed to provide Rosson with adequate notice and hearing before converting the case to Chapter 7, as required by 11 U.S.C. §§ 102(1) and 1307(c), Rosson cannot show prejudice from the bankruptcy court's deficient procedures. Therefore, we affirm.

## BACKGROUND

Rosson filed his voluntary petition for bankruptcy protection under Chapter 13 on August 13, 2004. At that time, Rosson was involved in an arbitration concerning the breakup of an entity called Bleu, LLC. Over the next nine months, while

attempting to confirm a Chapter 13 plan over objections from creditors and the United States Trustee, Rosson repeatedly assured the bankruptcy court that he would soon be receiving several hundred thousand dollars as the result of the arbitration proceeding, and that the funds would be used to pay his debts under the plan.[1]

On July 1, 2005, Rosson reported to the court that the arbitrator had awarded him approximately $185,000. On July 6, 2005, the court ordered Rosson to deposit the arbitration funds with the Chapter 13 Trustee. Rosson admits that he did not deposit the funds with the Trustee until early September, at which time he deposited only $104,000.[2]

Meanwhile, on August 11, 2005, Rosson's attorney, Harris, moved to withdraw as attorney of record, stating that there was a breakdown in communication with his client. A hearing on the motion to withdraw was set for August 17, 2005.

At the August 17, 2005 hearing on Harris's motion to withdraw, the court was informed that Rosson had not yet complied with the order to deliver the $185,000 to the Trustee. The court gave Rosson less than one hour to deliver the money before the court, on its own motion, would convert Rosson's case to Chapter 7. Rosson did not deliver the money, and the bankruptcy court docket reflects that the case was converted to Chapter 7 on August 17, although a formal order was not filed or entered until later. As the district court

---

[1]The bankruptcy court granted limited relief from the automatic stay to allow the arbitration proceeding to go forward.

[2]Rosson spent the balance of the funds to remodel his home, although this was not disclosed to the bankruptcy court until after the court's rulings that are challenged in this appeal. It appears that Rosson's home was later sold in foreclosure proceedings, with the proceeds distributed to secured creditors. Thus, although at least part of the $81,000 spent on the home was ultimately recovered by Rosson's creditors, Rosson's unauthorized use of the funds resulted in a redirection of estate assets from the general pool of creditors to those creditors holding a security interest in the home.

later concluded, the bankruptcy court converted the case with "essentially no notice." The bankruptcy court explained that there was too much money involved to be "horsing around with" and "the Court[ was] left with . . . only one course of action, . . . to convert the case so there's a [Chapter 7] trustee to go after the money." The same day (August 17) Rosson filed a "Notice of Dismissal" notifying the court that he was voluntarily dismissing his Chapter 13 case under 11 U.S.C. § 1307(b) and asked the court to enter an order dismissing the petition.[3] On September 7, 2005, the court entered an order converting the case to a Chapter 7 proceeding and denying the request for dismissal.[4] On September 8, 2005, Rosson appeared through new counsel and moved for reconsideration on the basis that his right to voluntary dismissal was "absolute." In an order entered September 16, 2005, the court denied the motion, stating that it would be a "gross miscarriage of justice to allow [Rosson] to dismiss this case and abscond with [estate] proceeds." In denying the motion for reconsideration, the court applied a local rule stating that such motions are "disfavored" and will be granted only upon a showing of "manifest error" or "new facts or legal authority which could not have been [raised] earlier with reasonable diligence." W.D. Wash. Local Civ. R. 7(h)(1); *see also* W.D. Wash. Local Bankr. R. 9013(h) (applying Local Civil Rule 7(h)(1) to bankruptcy cases).

---

[3]The parties disagree as to whether Rosson's Notice of Dismissal, which the bankruptcy court characterized as a motion to dismiss, was properly filed. We need not decide that question because it does not affect our resolution of the case. We assume for purposes of this appeal that Rosson's notice, or motion, was properly filed.

[4]That order inaccurately stated that: "This matter came before the . . . Court on August 17, 2005 on the Debtor's motion to dismiss his Chapter 13 case. That motion was heard on August 17, 2005 and was denied by this Court at the hearing." In fact, as noted above, the August 17, 2005 hearing related to Harris's motion to withdraw as counsel of record. The motion to dismiss was not discussed or ruled on at the August 17 hearing. Indeed, it appears that the motion to dismiss (or "Notice of Dismissal") was not even *filed* until after that hearing.

Rosson appealed to the district court, which affirmed. He then timely appealed to this court, raising essentially the same arguments that he raised before the district court: (1) the right to dismiss a Chapter 13 case under 11 U.S.C. § 1307(b) is absolute; and (2) when the bankruptcy court converted his case to Chapter 7, it violated his right to notice and a meaningful hearing under 11 U.S.C. §§ 102(1) and 1307(c).

## JURISDICTION

**[1]** The district court had jurisdiction to review final bankruptcy court orders under 28 U.S.C. § 158(a), and we have jurisdiction, under 28 U.S.C. § 158(d), to review bankruptcy court orders originally reviewed under 28 U.S.C. § 158(a). We have not previously considered whether an order converting a bankruptcy case to Chapter 7 is final and appealable.[5] *But cf. Pioneer Liquidating Corp. v. United States Trustee* (*In re Consol. Pioneer Mortgage Entities*), 264 F.3d 803, 804 (9th Cir. 2001) (reviewing order converting case from Chapter 11 to Chapter 7 without addressing finality). We have no trouble, however, concluding that such an order is sufficiently final to permit review under 28 U.S.C. § 158(a) and (d).

"We have adopted a 'pragmatic approach' to finality in bankruptcy . . . [that] emphasizes the need for immediate review, rather than whether the order is technically interlocutory." *Bonham v. Compton* (*In re Bonham*), 229 F.3d 750, 761 (9th Cir. 2000) (internal quotation marks omitted). "[A] bankruptcy court order is considered to be final and thus appealable where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it

---

[5]Neither party contends otherwise. Nevertheless, we have an independent obligation to assure ourselves of our own jurisdiction, as well as the jurisdiction of the district court, even if the parties are prepared to concede it. *See, e.g.*, *Solidus Networks, Inc. v. Excel Innovations, Inc.* (*In re Excel Innovations, Inc.*), 502 F.3d 1086, 1092 (9th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2080 (2008).

is addressed." *Id.* (internal quotation marks omitted); *see also Allen v. Old Nat'l Bank of Wash.* (*In re Allen*), 896 F.2d 416, 418 (9th Cir. 1990) (per curiam) ("Bankruptcy orders that determine and seriously affect substantial rights can cause irreparable harm if the losing party must wait until bankruptcy court proceedings terminate before appealing.").

**[2]** An order converting a case under another chapter to one under Chapter 7 determines finally the discrete issue to which it is addressed, i.e., whether or not the case will be converted. *See Vista Foods U.S.A., Inc. v. Unsecured Creditors' Comm.* (*In re Vista Foods U.S.A., Inc.*), 202 B.R. 499, 500 (B.A.P. 10th Cir. 1996) (per curiam) ("Conversion ends the litigation regarding the discrete controversy of whether the case should proceed under chapter 11 or chapter 7."). Moreover, because a conversion to Chapter 7 takes control of the estate out of the hands of the debtor, it seriously affects substantive rights and may lead to irreparable harm to the debtor if immediate review is denied. *See Mason v. Young* (*In re Young*), 237 F.3d 1168, 1173 (10th Cir. 2001) (explaining that "under Chapter 7, once the debtor's assets have been liquidated, it is virtually impossible to reassemble them, and therefore an order converting to Chapter 7 is necessarily more final in nature than an order converting to Chapter 13")[6]; *see also In re Firstcent Shopping Ctr., Inc.*, 141 B.R. 546, 550 (S.D.N.Y. 1992) (holding that "[c]onversion of a bankruptcy case [to Chapter 7] is final and . . . appealable" and quoting *In re Rebeor*, 89 B.R. 314, 320-21 (Bankr. N.D.N.Y. 1988) ("[I]mmediate review [i]s necessary to protect Debtor's substantive rights to reorganize in Chapter 13 and to prevent irreparable harm

---

[6]In *Young*, the Tenth Circuit held that, in contrast to an order converting a case *to* Chapter 7, an order converting a case *from* Chapter 7 to Chapter 13 did not become final and appealable until after confirmation of a Chapter 13 plan. *See id.* at 1173. *But see, e.g., Bannish v. Tighe* (*In re Bannish*), 311 B.R. 547, 548-49 (C.D. Cal. 2004) (holding order "effectively convert[ing] . . . case from Chapter 7 to Chapter 13" final and appealable). Our holding today is limited to the finality of those conversion orders that convert a case *to* Chapter 7.

through the potential loss of his property sold to good faith purchasers.")). We therefore hold, in accordance with all other courts of which we are aware that have considered the issue,[7] that a bankruptcy court order converting a case from one under another chapter of the Bankruptcy Code to one under Chapter 7 is a final and appealable order.

## STANDARD OF REVIEW

"On appeal from a district court's affirmance of a bankruptcy court decision, we independently review the bankruptcy court's decision, without giving deference to the district court." *Hebbring v. U.S. Trustee*, 463 F.3d 902, 905 (9th Cir. 2006). We review for abuse of discretion the bankruptcy court's ultimate decisions to deny a request for dismissal of a Chapter 13 case under § 1307(b) and to convert a case from Chapter 13 to Chapter 7. *See Leavitt v. Soto* (*In re Leavitt*), 171 F.3d 1219, 1222-23 (9th Cir. 1999); *Croston v. Davis* (*In re Croston*), 313 B.R. 447, 450 (B.A.P. 9th Cir. 2004), *abrogated on other grounds by Marrama*, 127 S. Ct.

---

[7]*See, e.g.*, *Cabral v. Shamban* (*In re Cabral*), 285 B.R. 563, 571 (B.A.P. 1st Cir. 2002) ("Orders converting a Chapter 13 case to a case under Chapter 7 are final orders."); *In re Vista Foods U.S.A., Inc.*, 202 B.R. at 500 (B.A.P. 10th Cir.) (holding that order converting case from Chapter 11 to Chapter 7 is final and appealable); *Halvajian v. Bank of N.Y.* (*In re Halvajian*), 216 B.R. 502, 510 (D.N.J.) (same), *aff'd*, 168 F.3d 478 (table) (3d Cir. 1998) (unpublished order); *Firstcent Shopping Ctr., Inc.*, 141 B.R. at 550-51 (S.D.N.Y.) (same); *Rebeor*, 89 B.R. at 321 (Bankr. N.D.N.Y.) (Chapter 13 to Chapter 7).

We note that one district court ruled that a bankruptcy court order converting a case to Chapter 7 was non-final and non-appealable, but that ruling was abrogated on appeal. *See Fraidin v. Weitzman* (*In re Fraidin*),188 B.R. 529, 532 & n.1 (D. Md. 1995) (holding that order converting case from Chapter 11 to Chapter 7 was not final or appealable, but providing, in the alternative, analysis of appeal on the merits), *aff'd on other grounds*, 110 F.3d 59 (table), 1997 WL 153826, at *1 (4th Cir. 1997) (unpublished per curiam opinion) (holding that bankruptcy court's conversion order *was* appealable, either on grounds of finality or as a collateral order, but affirming district court's alternate decision on the merits).

1105. We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Hebbring*, 463 F.3d at 905.

## DISCUSSION

As noted, Rosson argues that: (1) he was improperly denied his right to voluntarily dismiss his Chapter 13 case; and (2) he was denied statutorily-guaranteed procedures when the bankruptcy court converted his case without notice and a meaningful hearing. We address these arguments in turn.

## I.  Denial of right to voluntarily dismiss a Chapter 13 case

[3] Sections 1307(b) and 1307(c) of the Bankruptcy Code provide as follows:

> (b)   On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

> (c)   . . . [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under [chapter 13] to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1307(b)-(c). These two provisions—i.e., that the court "shall" dismiss a case on request of the Chapter 13 debtor, but that the court also "may" convert a Chapter 13 case to Chapter 7 "for cause"—can conflict where, on the one hand, a debtor requests voluntary dismissal, while, on the other hand, a party in interest or the trustee moves to convert

—or the court, acting on its own, converts—the case to Chapter 7.[8]

**[4]** The conflict between § 1307(b) and (c) has divided courts, including two of our sister circuits, with some courts holding that a debtor has an absolute right to dismiss under § 1307(b), notwithstanding pending motions to convert under § 1307(c), while other courts hold that a bankruptcy court retains the power to convert a case under § 1307(c), even in the face of a debtor's request for dismissal under § 1307(b). *Compare, e.g.*, *Barbieri v. RAJ Acquisition Corp.* (*In re Barbieri*), 199 F.3d 616, 619 (2d Cir. 1999) (holding that, at any time prior to an actual order of conversion, "a debtor has an absolute right to dismiss a Chapter 13 petition under § 1307(b), subject only to the limitation explicitly stated in that provision"), *with, e.g.*, *Molitor v. Eidson* (*In re Molitor*), 76 F.3d 218, 220 (8th Cir. 1996) (rejecting "absolute" right of dismissal under § 1307(b) in cases involving bad faith or abuse of process, because "the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts"). *See generally In re Jacobsen*, 378 B.R. 805, 809 (Bankr. E.D. Tex. 2007) (collecting cases on both sides of the split).

**[5]** Although we have not weighed in on this question,[9] our

---

[8]Although the statute provides for conversion "on request of a party . . . or the . . . trustee," 11 U.S.C. § 1307(c), there is no doubt that the bankruptcy court may also convert on its own motion. *See id.* § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

[9]In the district court, Rosson argued that we *had* addressed this question in *Nash v. Kester* (*In re Nash*), 765 F.2d 1410 (9th Cir. 1985), where we stated: "Under § 1307(b), a debtor has an absolute right to dismiss a Chapter 13 petition." *Id.* at 1413. Our holding in *Nash*, however, was concerned

circuit's Bankruptcy Appellate Panel (BAP) adopted the "absolute right" approach in *Beatty*. *See Beatty*, 162 B.R. at 857 ("The better reasoned view is that a court must dismiss the case upon the debtor's request for dismissal under section 1307(b) if that request is made prior to the . . . [formal] order converting the case to Chapter 7."); *see also Croston*, 313 B.R. at 451 (reaffirming and following *Beatty*). In his opening brief, Rosson argues that we should follow and adopt *Beatty* and hold that the bankruptcy court abused its discretion by refusing to grant his request for dismissal, which was filed prior to the court's formal order converting the case to Chapter 7.[10]

**[6]** After Rosson filed his opening brief, however, the Supreme Court issued *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105 (2007). In *Marrama*, the Court firmly rejected the analysis that the BAP applied in *Croston*— the case that followed and reaffirmed *Beatty*—and implicitly abrogated *Beatty* as well. Indeed, in his reply brief, Rosson acknowledges that the "absolute" right to dismissal under § 1307(b), as recognized in *Beatty*, is no longer viable after *Marrama* because that right must be qualified by the court's power to convert a case based on the debtor's bad-faith con-

---

with the res judicata effect of a prior voluntary dismissal under § 1307(b), not the potential conflict between § 1307(b) and § 1307(c). The quoted sentence is thus likely dicta as applied to this case. More importantly, as explained in the text *infra*, even if the statement in *Nash* is a holding, it has been abrogated by subsequent Supreme Court precedent. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a three-judge panel is not bound by a prior three-judge panel's published decision where subsequent Supreme Court case law is "clearly irreconcilable" with original panel's holding).

[10]BAP opinions are not binding on this court, *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990), but we have noted the importance of the BAP in providing "guidance on frontier bankruptcy issues," *id.* (O'Scannlain, J., concurring specially), and we have adopted BAP opinions where persuasive. *See, e.g., Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002).

duct or abuse of the bankruptcy process. Nevertheless, Rosson argues that he did not engage in any bad-faith conduct, and that he therefore had a right to dismiss his case. Below, we first briefly clarify the effect of *Marrama* on the rule announced in *Beatty* and then address Rosson's argument that he should prevail, even under the new rule.

## A.   Status of *Beatty*'s "absolute right" rule after *Marrama*

As noted, courts have split on the question of the "absolute" nature of the right to dismissal of a Chapter 13 case under § 1307(b). After *Marrama*, however, the "absolute right" position is no longer viable.

In *Marrama*, the Court took up the same question addressed by the BAP in *Croston*—the right of a debtor, under 11 U.S.C. § 706(a), to convert his Chapter 7 case to Chapter 13. *See Marrama*, 127 S. Ct. at 1108 (identifying the issue as whether "even a bad-faith debtor has an absolute right to convert at least one Chapter 7 proceeding into a Chapter 13 case"). As the BAP recognized in *Croston*, this question is analytically indistinguishable from the question in *Beatty* (i.e., the absolute right of a debtor to voluntarily dismiss his Chapter 13 case). As *Croston* held, the text of § 706(a)[11] "is indistinguishable from the parallel language of § 1307(b) . . . [and] it follows that [*Beatty*'s] analysis of the absolute nature of § 1307(b) applies to the same question under § 706(a)." *Croston*, 313 B.R. at 451. Thus, in *Croston*, the BAP followed *Beatty* and held that a debtor had an "absolute," one-time right to convert his case from Chapter 7 to Chapter 13, and

---

[11]Section 706(a) provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

that this was true notwithstanding a bankruptcy court's concern with "perceived dysfunction" or "bad faith manipulation" of the bankruptcy process. *Id.* at 451-52.

In *Marrama*, however, a majority of the Court unequivocally rejected the *Croston* position, holding that the right to convert to Chapter 13 was impliedly limited by the bankruptcy court's power to take any action necessary to prevent bad-faith conduct or abuse of the bankruptcy process. *See id.* at 1111-12 (noting that the Bankruptcy Code specifically grants bankruptcy judges "broad authority . . . to take any action necessary or appropriate 'to prevent an abuse of process' ") (quoting 11 U.S.C. § 105(a)). Thus, the Court held that bankruptcy judges had the power to differentiate between "the vast majority" "of honest but unfortunate debtors who do possess an absolute right to convert their cases from Chapter 7 to Chapter 13" and "the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id.* at 1111.

Although the Court declined to decide "with precision what conduct qualifies as 'bad faith'," the Court "emphasize[d] that the debtor's conduct must, in fact, be atypical." *Id.* at 1112 n.11. Applying the rule to the facts before it, the Court concluded that Marrama had "made a number of statements about his principal asset [a house] . . . that were misleading or inaccurate," *id.* at 1108, and that he had therefore "forfeited his [purportedly absolute] right to proceed under Chapter 13." *Id.* at 1109.

**[7]** There is no doubt that after *Marrama*, *Croston* is no longer good law. *Marrama* expressly cited *Croston* as one of the cases recognizing a debtor's absolute right to convert a Chapter 7 case to Chapter 13—an approach that the Court then rejected. *See id.* at 1108 n.2, 1111-12. Moreover, although *Marrama* did not address the exact issue decided in *Beatty*, it is clear that, after *Marrama*, *Beatty* too is no longer good law, insofar as it holds that a Chapter 13 debtor has an

absolute right to dismiss under § 1307(b). As noted above, *Croston* was at pains to explain that there was no analytical distinction between the legal issue in that case and the issue in *Beatty*. *See Croston*, 313 B.R. at 451-52. We agree, and accordingly we conclude that the Court's rejection of the "absolute right" theory as to § 706(a) applies equally to § 1307(b).**¹²** Therefore, in light of *Marrama*, we hold that the debtor's right of voluntary dismissal under § 1307(b) is not absolute, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or "to prevent an abuse of process." 11 U.S.C. § 105(a). *See Jacobsen*, 378 B.R. at 811 (reaching same conclusion). *But see In re Polly*, ___ B.R. ___, 2008 WL 3330636 (Bankr. N.D. Tex. Aug. 8, 2008) (holding that right to voluntarily dismiss Chapter 13 case is "absolute" (distinguishing *Marrama*).

## B.   Application of *Marrama* to Rosson's case

Rosson acknowledges in his reply brief that, after *Marrama*, bad-faith conduct can "justify the bankruptcy court's denial of . . . the right to voluntarily dismiss a [Chapter 13] petition," but he attempts to distinguish his case from *Marrama* on the facts, insisting that his "conduct is nothing like that of the dishonest [debtor] described in *Marrama*." Rosson states that "*Marrama* involved a debtor who consciously lied to the court, attempted to remove assets from the court's jurisdiction, and took efforts to conceal what he had done." Rosson argues that, by contrast, he merely pledged the arbitration proceeds "for use in [his] Chapter 13 case," and that "it is not at all obvious that [he] must have known that investing a portion of the arbitration award in repairs to the residence—a

---

**¹²**This is true even though, as Rosson points out, § 706(a) states that a *debtor* "may" convert a case, whereas § 1307(b) states that the *court* "shall" dismiss a case at the debtor's request. Here, the different formulations are not dispositive; the important point established by *Marrama* is that even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process.

valuable asset of the estate—was inconsistent with 'using' the funds in his Chapter 13 case."

**[8]** Rosson's argument is not persuasive. Even conceding the doubtful proposition that Rosson decided in good faith that using the arbitration proceeds to remodel his home was consistent with his repeated pledges to apply that money to his Chapter 13 plan, his use of the money was still in defiance of the bankruptcy court's specific order to *deposit the money with the Chapter 13 Trustee*. Moreover, Rosson never—not even in his motion for reconsideration—provided the bankruptcy court with an explanation of what happened to the missing funds. He simply failed to deliver the funds as ordered and then, when taken to task for failing to do so, invoked his supposedly absolute right to withdraw from the bankruptcy process by requesting that his Chapter 13 petition be dismissed. Under these circumstances, it was hardly unreasonable for the bankruptcy court to conclude that Rosson sought to voluntarily dismiss his case in order to "abscond with [estate] proceeds." Moreover, bad faith is a finding of fact reviewed for clear error. *Leavitt*, 171 F.3d at 1222-23; *Eisen v. Curry* (*In re Eisen*), 14 F.3d 469, 470 (9th Cir. 1994) (per curiam). Even if Rosson's conduct was arguably less egregious than Marrama's, the bankruptcy court did not clearly err in finding that Rosson's failure to deliver to the Trustee $185,000 in estate assets (or, when given the chance, to explain the status of the money) amounted to atypical, bad-faith debtor conduct.[13]

**[9]** In sum, it is clear from the record that the bankruptcy court acted "to prevent" what it reasonably perceived to be

---

[13]The bankruptcy court never used the words "bad faith" or "abuse of process." Nevertheless, the court's comments at the August 17 hearing and in its order denying the motion for reconsideration make clear that this was the basis for its decision. *See Leavitt*, 171 F.3d at 1222-23, 1226 (affirming dismissal of Chapter 13 case, notwithstanding lack of "express findings" of bad faith, where record "provide[d] a clear and complete understanding of the basis for [the bankruptcy court's] ruling").

"an abuse of process." 11 U.S.C. § 105(a). As this type of action was specifically approved by *Marrama*, we hold that the bankruptcy court did not abuse its discretion when it converted the case on its own motion and denied voluntary dismissal.

## II.  Denial of notice and a meaningful hearing

**[10]** We next turn to Rosson's claim that "the bankruptcy court erred by converting his case from Chapter 13 to Chapter 7 without notice and a hearing, as required by 11 U.S.C. § 102(1)(A)."

Section 102(1) of the Bankruptcy Code states that:

"[A]fter notice and a hearing", or a similar phrase— (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but (B) authorizes an act without an actual hearing if such notice is given properly and if— (i) such a hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.

11 U.S.C. § 102(1); *see also id.* § 1307(c) (requiring "notice and a hearing" as prerequisite to conversion of a case from Chapter 13 to Chapter 7); *cf. Tennant v. Rojas* (*In re Tennant*), 318 B.R. 860, 870 (B.A.P. 9th Cir. 2004) (holding that "notice and a hearing" are required even where the bankruptcy court acts pursuant to "its general powers under Section 105(a)"). We have "emphasize[d] that the notice-and-hearing definition in § 102(1) is flexible and sensitive to context." *Law Offices of David A. Boone v. Derham-Burk* (*In re Eliapo*), 468 F.3d 592, 603 (9th Cir. 2006). "The essential point is that the court should give counsel a *meaningful*

opportunity to be heard." *Id.* (internal quotation marks omitted).

Here, Rosson correctly points out that the bankruptcy court's initial August 17, 2005 "hearing" on conversion provided him essentially no notice, and no "opportunity to present legal argument and/or evidence." *Id.* (internal quotation marks omitted). Although various motions to convert the case had been pending for months, those motions were scheduled to be addressed at a September hearing, and Rosson had no notice that conversion to Chapter 7 would be addressed at the August 17 hearing on Harris's motion to withdraw. Nevertheless, the bankruptcy court was within its discretion to enter, with minimal or no notice, what it perceived as an emergency ruling to prevent dissipation of assets. As the district court noted, the bankruptcy court was "[f]aced with circumstances strongly suggesting that Mr. Rosson sought to defraud his creditors and the court." Thus, at the August 17 hearing, having learned of the status of the arbitration funds, the court provided the minimal notice due under the circumstances. *See* 11 U.S.C. § 102(1) (authorizing notice "appropriate in the particular circumstances" and "an act without an actual hearing if . . . there is insufficient time . . . before such act must be done").

[11] The problem, if any, is what happened next. Although the court was entitled to act summarily to prevent dissipation of the estate, Rosson was nevertheless entitled to a subsequent, meaningful opportunity to present any arguments that he had against conversion. Having issued an order to preserve assets of the estate, the bankruptcy court should then have promptly scheduled a hearing to allow Rosson to present argument and supporting declarations explaining why the order should be vacated. Instead, the court left it to Rosson to request a hearing, which he did by filing a motion for reconsideration. Although Rosson had an opportunity to present arguments against conversion in that motion, as a motion for reconsideration, it was decided with considerable deference to

the original ruling. *See* W.D. Wash. Local Civ. R. 7(h)(1) (quoted above). Thus, Rosson never received a *meaningful* hearing of his arguments against conversion.

**[12]** Of course, as the record shows, Rosson knew that he was required to turn over the arbitration funds to the Trustee, and that delivery of the $185,000 was a major factor in fending off the pending motions to convert. Nonetheless, Rosson was still entitled to an opportunity to be heard as to why the funds had not been delivered, and why the case should not have been converted. For instance, there could have been an unavoidable delay in transferring the funds from escrow. Or Rosson may have been confused about the deadline for turning over the funds (the bankruptcy court's prior, oral order to turn the funds over to the Trustee did not specify such a deadline). Rosson might have had any number of explanations of why his actions did not amount to bad-faith conduct, did not constitute abuse of the bankruptcy process, and did not justify conversion. Thus, even though the initial conversion order was justified, we agree with Rosson that the overall process provided by the bankruptcy court failed to afford him a meaningful opportunity to be heard, as required by § 1307(c) and § 102(1).

The difficulty for Rosson, however, is that, even when given an opportunity, he has *never actually provided a satisfactory explanation* of why the funds were not delivered. Rosson's motion for reconsideration provided no argument of the facts and offered no excuse for his failure to produce the $185,000 as ordered by the court. He did not make any of the kinds of arguments alluded to above. Instead, Rosson rested on the (now) manifestly inadequate legal claim that he had an "absolute" right to voluntarily dismiss his case.[14] For this rea-

---

[14]At oral argument, Rosson's counsel speculated that he may have made a "strategic error" by relying on the overly "legalistic" argument of the absolute right to dismiss under *Beatty*. Even if that statement is accurate, however, it is too late for this court to remedy that mistake.

son, Rosson can show no prejudice arising from the defective process afforded him. *See* Fed. R. Bankr. P. 9005 ("Harmless Error") (incorporating into bankruptcy rules Federal Rule of Civil Procedure 61, which provides: "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *cf. City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co.* (*In re City Equities Anaheim, Ltd.*), 22 F.3d 954, 959 (9th Cir. 1994) (rejecting due process claim for lack of prejudice where debtor could not show that any different or additional arguments would have been presented if bankruptcy court had timely approved petition for new counsel).[15]

**[13]** In short, even after receiving notice of the conversion and having the opportunity to be heard in opposition, Rosson offered nothing to counter the court's finding of bad faith. Under these circumstances, even though the bankruptcy court improperly applied the demanding standard of a motion to reconsider, it is nevertheless clear that the bankruptcy court properly denied the request for voluntary dismissal.[16] Because there is no reason to think that, given appropriate notice and a hearing, Rosson would have said anything that could have made a difference, Rosson was not prejudiced by any procedural deficiency. We hold that the bankruptcy court did not abuse its discretion in denying the motion to dismiss and con-

---

[15]*See also, e.g.*, *Union Planters Bank Nat'l Ass'n v. Martin* (*In re Martin*), 306 B.R. 591, 610-11 (C.D. Ill. 2004) (affirming ruling despite failure to provide adequate notice and hearing where debtor "was not prejudiced by the Bankruptcy Court's procedures"); *Fraidin*, 188 B.R. at 532 n.1 (cited *supra* n.7) (holding, in alternative, that any violation of notice and hearing requirement before converting case from Chapter 11 to Chapter 7 was harmless under Bankruptcy Rule 9005).

[16]We note that, although the bankruptcy court recited the deferential standard for a motion for reconsideration, its order—which states that "[i]t would be a gross miscarriage of justice to allow the Debtor to dismiss this case and abscond with proceeds that should be distributed to creditors of this estate"—makes clear that the court would have rejected Rosson's claim even if it had entertained Rosson's motion anew.

verting the case to Chapter 7. *See Leavitt*, 171 F.3d at 1223 ("[An] appellate court may affirm the lower court on any ground fairly supported by the record.").

**AFFIRMED.**