FILED

NOT FOR PUBLICATION          NOV 18 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. CC-16-1049-McTaF |
| JACK C. PRYOR, | Bk. No. 6:15-bk-19998-MH |
| Debtor. | |
| JACK C. PRYOR, | |
| Appellant, | |
| v. | MEMORANDUM[1] |
| UNITED STATES TRUSTEE, | |
| Appellee. | |

Argued and Submitted on October 21, 2016
at Pasadena, California

Filed - November 18, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark Houle, Bankruptcy Judge, Presiding.

_____

Appearances:    Stephen R. Wade argued for Appellant Jack C.
Pryor; Russell Clementson argued for Appellee
U.S. Trustee.

_____

Before:    MCKITTRICK,[2] TAYLOR and FARIS, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

[2] The Honorable Peter C. McKittrick, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

Debtor Jack Pryor ("debtor") appeals the bankruptcy court's order converting his individual chapter 11[3] case to a case under chapter 7. He argues that he did not have adequate notice and an opportunity to be heard before the court converted his case.

We AFFIRM.

FACTS

Debtor filed an individual chapter 11 case in October 2015. He had two earlier cases filed and dismissed in the previous year.

Debtor's schedules show that he owned 1,000 shares of stock in Diversified Products Industries ("DPI") and 1,000 shares of stock in Access Solar, Inc., which is 100 percent ownership of both businesses. The Statement of Financial Affairs described the businesses and indicated "Present" for the ending date for each business. Debtor valued his interest in DPI at $1,100,000, based on accounts receivable. Debtor's Schedule I listed DPI as the employer for both debtor and his non-filing spouse and stated that his spouse received a monthly salary of $2,975 from DPI. Debtor also disclosed that he owned various parcels of real property, including some parcels of bare land.

The Bankruptcy Auditor for the United States Trustee ("UST"), Herman Au, conducted an initial debtor interview on October 27, 2015, at which both debtor and his counsel appeared. At the interview, Au gave debtor the UST's Notice of

---

[3] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

Requirements and Guidelines for Chapter 11 Debtors in Possession. The guidelines detailed the information that was required to be filed with the UST within seven days of the petition date, including proof of insurance ("the 7-Day Package"). Au discussed DPI and Access Solar with debtor. Debtor did not indicate that either business had ceased operating. Au informed debtor that he was required to provide proof of liability insurance for DPI and Access Solar. Debtor did not challenge that requirement.

Debtor failed to submit to the UST any of the 7-Day Package documents. As a result, on November 4, 2015, the UST filed a Motion to Dismiss or Convert debtor's case, which listed the following missing documents:

a. Real property questionnaire;
b. Copy of the recorded petition;
c. Proof of closing of pre-petition bank accounts;
d. Proof of opening of Debtor-in-Possession accounts;
e. Proof of insurance;
f. Proof of required certificates and licenses (if any);
g. Statement of Major Issues and Timetable Report; and
h. A copy of the most recently filed tax returns.

Motion to Dismiss or Convert at 4:19-23. The UST's memorandum in support of the motion described "cause" for dismissal or conversion under § 1112(b)(4)(C), (F), and (H): failure to maintain insurance; failure to provide information requested by the UST; and failure to satisfy timely reporting requirements. The UST's argument in the memorandum focused on the need for proof of insurance on debtor's real property, arguing that without insurance there could be significant liability if a person were injured on debtor's premises. The motion was supported by Au's declaration.

3

The court held the initial hearing on the motion on December 8, 2015. Debtor appeared pro se; his counsel had withdrawn due to medical issues. By the time of that hearing, debtor had provided proof of insurance for his real properties and his automobiles. The court granted the UST's request for a continuance to allow debtor time to retain new counsel. It directed debtor to file a status report regarding engagement of counsel by January 27 and directed the UST to supplement its motion if there were any remaining or new deficiencies. All parties waived notice of the continued hearing.

Later in December, debtor retained new counsel, who appeared with debtor at the February 2 continued hearing on the motion to dismiss or convert. Debtor did not file a status report and the UST did not supplement his motion before the February 2 hearing.

At the February 2 hearing, the UST reported that there were still several outstanding items of compliance as of the hearing date, including that debtor had failed to provide proof that he had liability insurance coverage for some of the real properties and that he had recorded the petition for some of his real properties, and that debtor had failed to submit real property questionnaires for some of the properties, a final bank statement for debtor's prepetition bank account, and the major issues and timetable report. The UST also reported that debtor had not paid the quarterly UST fees. The parties agreed to a continuance of the hearing for a short time to allow debtor's counsel to address the UST's position that there were still compliance items missing.

4

The court set the hearing over for one week. It stated that, but for the UST's agreement to the continuance, the court would have dismissed or converted the case that day. It said that it intended to dismiss or convert because, despite the fact that debtor had retained counsel more than a month before, the case was four months old and the UST was still missing significant requested items. The court then directed counsel for the UST to review the UST files and to file a statement of any items still missing by February 8. It set the continued hearing for February 9. The court indicated that this would be debtor's "last shot." All parties waived notice of the February 9 hearing.

Late in the day of the February 2 hearing, counsel for the UST sent email correspondence to debtor's counsel listing 10 compliance items debtor still had not provided:

1) Real Property Questionnaire for 2 lots in Twenty Nine Palms, California;
2) Real Property Questionnaire for 35 acres in Rice, California;
3) Property/Liability Insurance for commercial property located at 19024 Ruppert Street, N. Palm Springs, CA;
4) Liability insurance for single family home located at 49965 Fuller Ave., Cabazon, CA;
5) Liability insurance for debtor's two business entities: Diversified Product Industries LTD and Access Solar Inc.;
6) Copy of final bank statement for pre-petition bank account (Wells Fargo #0182);
7) Proof of recorded petition in county (Los Angeles, San Bernardino, & Riverside);
8) Major Issues & Timetable Report;
9) File and serve monthly operating reports for October, November and December 2015; and
10) Proof of payment of quarterly fees of $325 for the 4th quarter of 2015.

UST Supplemental Statement in Support of Motion to Dismiss or Convert, Exh. 1 to Declaration of Everett Green. Debtor's

5

counsel responded with an email sent at 3:50 p.m. on February 8 that provided many of the items requested. With regard to proof of liability insurance for the businesses, counsel indicated that he was "waiting on client to provide us with proof of documents." Id. at Exh. 2. He also said that he was "waiting on client to provide proof of payment" of the UST quarterly fees. Id.

The hearing was held the next day at 2:00 p.m. At 11:53 a.m. that day, debtor's counsel filed a declaration in opposition to the UST's motion to dismiss or convert. In his declaration, counsel stated that neither of debtor's businesses maintains insurance because neither had conducted business since before the petition date.

Debtor's counsel appeared at the continued hearing on the motion to dismiss; debtor did not attend.[4] The UST reported that there were two outstanding items of non-compliance: proof of insurance for debtor's two businesses, DPI and Access Solar, and payment of the quarterly UST fees for the fourth quarter of 2015, which was due by the end of January 2016 and was delinquent on February 1. The UST acknowledged that debtor's counsel had tendered an untimely payment of the UST fees earlier in the day of the hearing. He also pointed out that, although many of the compliance items had been provided, they had not been provided by the deadline set by the court.

In response to counsel's assertion that debtor's businesses

[4] Counsel represented to the court that debtor had left because he was distraught at the prospect of losing 40 years of work.

6

were not operating, the UST called its analyst, Mr. Au, to testify. Au testified that, at the initial debtor interview, he discussed the two businesses with debtor. With regard to DPI, debtor had told him that the business sold steel construction products, that it had been unprofitable, and that they were trying to collect some accounts from a vendor. Debtor had not indicated that the business had ceased operations. As to Access Solar, debtor had told Au that the company installed and sold solar panels and had an office operating out of one of debtor's commercial properties. Au testified that neither debtor nor his counsel at the initial debtor interview had objected when Au indicated that the UST needed proof of liability insurance for the two businesses.

Debtor's counsel then testified as a witness that he had checked the status of Access Solar and that its license with the California Contractors License Board had expired before the chapter 11 petition was filed. He also stated that he had visited the Access Solar offices and saw no employees or product. He had reviewed the company records, which showed no business activity since sometime before bankruptcy.

Counsel also testified that he had inspected the DPI facility and saw no inventory of steel products or employees. To his knowledge, DPI's only postpetition activity was its prosecution of an appeal in a case in which it was seeking a million-dollar recovery.

Counsel did not request a continuance to allow debtor to

7

testify about whether the businesses were active.[5]  He argued that insurance should not be required because the businesses were not active.

At the close of the hearing, the court concluded that the case would be dismissed or converted.  First, it found that debtor failed "to maintain appropriate insurance that poses a risk to the estate or to the public."  Transcript of February 9, 2016 hearing at 97:7-8.  It noted that debtor's schedules and Statement of Financial Affairs indicated that the businesses were continuing to operate, that Schedule B showed an account receivable for DPI in the amount of $1.1 million, and that debtor had said at the initial debtor interview that the businesses continued to operate.

Second, it found a failure timely to provide information reasonably requested by the UST, including failure to provide information about insurance until approximately four months into the case.

Third, the court found that debtor had failed timely to pay the quarterly UST fees, which were due nine days earlier.

The court then considered whether to dismiss or convert to chapter 7 and concluded that conversion to chapter 7 was the better alternative.

ISSUE

Whether the bankruptcy court abused its discretion in converting the case from chapter 11 to chapter 7.

---

[5]  He did ask to leave the record open to provide evidence to challenge Au's credibility.

JURISDICTION

The bankruptcy court had jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2) and § 1334(a). This panel has jurisdiction under 28 U.S.C. § 158(c).

STANDARD OF REVIEW

The panel reviews a court's decision to convert a chapter 11 case to chapter 7 for an abuse of discretion. Pioneer Liquidating Corp. v. U.S. Tr. (In re Consol. Pioneer Mortg. Entities), 264 F.3d 803, 806 (9th Cir. 2001). The court abuses its discretion if it applies the wrong legal standard or if its application of the correct legal standard is "illogical, implausible, or without support in inferences that may be drawn from the facts on the record." United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

Whether the court's procedure complies with due process is a legal question reviewed de novo. Beneficial Cal., Inc. v. Villar (In re Villar), 317 B.R. 88, 92 (9th Cir. BAP 2004). Debtor must show that he was prejudiced by any violation of due process. See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776 (9th Cir. 2008); Rule 9005 (incorporating Fed. R. Civ. P. 61) ("court must disregard all errors and defects that do not affect any party's substantial rights").

DISCUSSION

1. The court did not abuse its discretion in finding cause based on lack of insurance for the business entities

Debtor argues that the bankruptcy court abused its discretion in converting his case to chapter 7, because he did not have adequate notice of the basis for the motion or an

9

adequate opportunity to be heard on the motion, in violation of both the Bankruptcy Code requirement of notice and a hearing and his due process rights under the Fifth Amendment to the United States Constitution. He does not argue that the court erred in finding, based on the evidence, that debtor had failed to provide proof of insurance for DPI and Access Solar, that lack of proof of insurance provides cause under § 1112(b), or that, having found cause, the court abused its discretion in converting rather than dismissing the case.[6]

Section 1112(b)(1) provides that, with exceptions not applicable here, "on request of a party in interest, and after notice and a hearing, the court shall convert" a chapter 11 case to one under chapter 7, or dismiss, "whichever is in the best interests of creditors and the estate, for cause[.]" "Cause" includes:

> (C) failure to maintain insurance that poses a risk to the estate or to the public;
>
> . . .
>
> (H) failure timely to provide information or attend

---

[6] After oral argument in this appeal, the UST submitted supplemental authority pursuant to Rule 8014(f). He cites a November 4, 2016, decision from the District of Massachusetts that addressed whether there is cause for dismissal of a chapter 11 case when the debtor fails to maintain insurance on assets of a company wholly owned by the debtor. See Dickey v. Harrington (In re Dickey), Case No. 16-10649-TSH, 2016 WL 6584905 (D. Mass. Nov. 4, 2016). We have reviewed the decision in Dickey. Because the issue discussed in that case relates to the merits of the court's finding in this case that liability insurance on debtor's business entities was appropriate, and debtor does not challenge the merits of the court's decision on that point in this appeal, the Dickey decision does not affect our conclusion in this case.

10

meetings reasonably requested by the United States trustee . . . ;

. . .

(K) failure to pay any fees or charges required under chapter 123 of title 28; . . . .

§ 1112(b)(4). "[T]he bankruptcy court has wide discretion in determining what constitutes cause adequate for conversion under § 1112(b)." Khan v. Rund (In re Khan), BAP No. CC-11-1542-HPaD, 2012 WL 2043074, at *5 (9th Cir. BAP 2012).

The UST, as the moving party, has the burden to demonstrate that cause exists to dismiss or convert; if the UST establishes cause, the court must convert or dismiss, unless an exception applies. 7 Collier on Bankruptcy ¶ 1112.04[4] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2011) ("Collier").[7]

> Procedurally, § 1112(b) requires notice and a hearing. See § 1112(b). Substantively, § 1112(b) establishes "a two-step analysis for dealing with questions of conversion and dismissal." Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006). The first step is a determination whether cause exists for conversion or dismissal. The second step requires the court to apply a "balancing test" to choose between conversion and dismissal based upon the "best interests of the creditors and the estate." Id.

Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 729 (9th Cir. BAP 2008) (footnote omitted).

Section 1112(b) requires "notice and a hearing." § 1112(b)(1). "After notice and a hearing" is construed to mean

---

[7] Debtor argues that "the harshness of dismissal mandates that it result only upon a strong evidentiary showing[,]" and that the panel should closely scrutinize a dismissal. Appellant's Brief at 12-13. Any special scrutiny for dismissals without prejudice is not applicable here, where the court did not dismiss but instead converted the case to chapter 7.

11

"after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances[.]" § 102(1)(A).

"[N]otice is not only a statutory requirement, but a constitutional requirement as well." Great Pac. Money Markets, Inc. v. Krueger (In re Krueger), 88 B.R. 238, 241 (9th Cir. BAP 1988).

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The purpose of notice under the Fifth Amendment "is to apprise the affected party of, and permit adequate preparation for, an impending hearing." GMAC Mortg. Corp. v. Salisbury (In re Loloee), 241 B.R. 655, 661 (9th Cir. BAP 1999).

The statutory and constitutional notice and hearing requirements are similar and, for purposes of this case, will not be discussed separately.

Debtor's arguments distill to two major points: (1) he did not have adequate notice that lack of proof of insurance on his business entities was a basis for the UST's motion to dismiss or convert and (2) the February 9 hearing procedure was flawed. As a result, he argues, the only basis for the court's decision to convert the case was his failure to pay the UST fees on time, which is not sufficient alone to justify converting the case.

A. Notice was sufficient

The record supports the bankruptcy court's conclusion that debtor had sufficient notice that he needed to provide proof of

12

insurance on his two businesses or face possible dismissal or conversion. First, the UST's auditor conducted an initial client interview in late October 2015, at which time he discussed the two businesses with debtor and advised him that he needed to provide proof of liability insurance on those businesses. Neither debtor nor his then-counsel objected to that requirement or told the auditor that the businesses were not operating. The auditor gave debtor and his counsel a copy of the UST Guidelines, which also notified debtor of the requirement to provide proof of insurance coverage within seven days of the petition date.

Second, the UST's motion to dismiss or convert, filed on November 4, 2015, alleged that debtor had not provided specific items that were required to be provided within seven days, including proof of insurance. The motion was accompanied by Au's declaration in which he says that, at the initial debtor interview, he asked debtor whether he had liability insurance and that debtor said he was unsure.

Motions "must state with particularity the grounds therefor, and the relief or order sought." 10 Collier at ¶ 9013.03 (2013) (footnote omitted); Rule 9013. This requirement is flexible, and lack of specificity is allowed "where the opposing party knew or had notice of the particular grounds being relied upon." 10 Collier at ¶ 9013.03 (2013) (footnote omitted). "Proof of insurance" was specific enough to provide notice that debtor needed to provide proof of the insurance discussed at the initial debtor interview, including insurance on his business entities. Certainly by the time of

13

the final hearing on February 9, as discussed below, debtor knew that the UST sought dismissal or conversion based in part on lack of proof of insurance on those entities.

Third, after the court held an initial and then a continued hearing, on February 2, 2016, the UST sent to debtor's replacement counsel via email a list of items still out of compliance, including both proof of liability insurance for debtor's two business entities and proof of payment of the UST's quarterly fees.

This email was sent after business hours on February 2; the continued hearing was February 9, and debtor knew that the court had required the UST to file a declaration detailing any continuing compliance issues by the close of business on February 8. Further, the court had told debtor at the February 2 hearing that this continuance was his last shot at compliance. The UST filed the February 8 declaration, which advised the court that debtor had failed to provide proof of insurance on the entities and had failed to pay the UST quarterly fees.

Under the circumstances, any lack of specificity in the motion did not deprive debtor of notice that he was required to provide proof either that his two business entities were insured or that insurance was not required. That specificity was provided at the earliest in late October 2015 and the latest by February 2, 2016, which was a week before the final hearing on the motion. Under the circumstances, where the case was four months old and debtor had failed timely to provide many items required by the UST until shortly before the February 9 hearing,

14

a week's notice was sufficient to allow debtor to prepare and respond to the UST's request.

Debtor points out that the bankruptcy court sustained an objection to a question put to Au, asking his "understanding of the nature of the insurance that's required" of a debtor in possession. Transcript of February 9, 2016 hearing at 47:13-14. If the question was too vague for testimony, debtor argues, how could it be sufficient to give debtor notice of what insurance was being required?

The question asked for the "nature" of the insurance that was required; debtor had been told at the initial debtor interview that he needed to provide proof of liability insurance on the business entities, and failure to provide proof of insurance was listed in the motion to dismiss or convert. Debtor was again advised in the February 2 email of the need to prove insurance on the business entities. Even if the question to Au was vague, the notice to debtor was not.

Debtor argues that the notice was not sufficient because he was misled by the UST, who changed his position regarding what was required. At the December 8 hearing, counsel for the UST advised the court that debtor had provided proof of liability coverage for his real properties and automobiles, which counsel said was "the bulk of our concerns in terms of our motion." Transcript of December 8, 2015 hearing at 6:22-23. At the February 2 continued hearing, after first reporting that debtor had not provided proof of insurance, counsel said that they had "seen a few of the compliance items, most critically, proof of insurance coverage for the Rupert property." Transcript of

15

February 2, 2016 hearing at 18:4-7. Then, after the close of business that same day, the UST sent the email to debtor's counsel showing the need for proof of insurance on debtor's two business entities.

There is no doubt that the motion and the UST's comments to the court could have been more specific as to what insurance coverage debtor needed to show. However, there is no dispute that by the end of the day on February 2, a week before the continued hearing, debtor was reminded of the need to prove that his business entities had liability insurance, a requirement of which he had been advised at the initial debtor interview in October. Debtor did not argue to the bankruptcy court that additional time would solve the problem; in fact, counsel told the court that more time would not matter.

Debtor had sufficient notice of what was required under the circumstances to apprise him of the basis for the UST's motion to dismiss or convert and to allow him an adequate opportunity to respond.

B. Debtor had an adequate opportunity to be heard

Although he did not raise the issue in his brief, at oral argument debtor argued that he was denied an adequate opportunity to be heard with regard to the insurance on the business entities. He mentioned two bankruptcy court actions at the February 9 hearing that he claims denied him due process: (1) the court's denial of a continuance to allow debtor to appear and testify; and (2) the court's denial of debtor's attempts to question Au regarding the nature of insurance that was appropriate for the two business entities.

16

We have carefully reviewed the transcript of the February 9 hearing and do not find that debtor's counsel made a request to continue the hearing so debtor could testify as to the level of business activity of the two business entities. Early in the hearing, after the court said that it would take testimony from Au as to whether or not debtor had represented to Au at the initial debtor interview that the businesses were still operating, counsel said that "Mr. Pryor should have an opportunity to attend" the hearing. Transcript of February 9, 2016 hearing at 25:8-9. Our review of the transcript does not show any time when debtor's counsel told the court that the hearing should be continued so debtor could testify. Without such a request, the court did not deny debtor due process by concluding the hearing. In fact, debtor's counsel told the court that he was fine with the court's decision to allow Au to testify and with the court's comment that it would have taken testimony from debtor if debtor had been there.

Debtor had appeared at the first and second hearings on the motion to dismiss. He did not attend the final hearing, even though the court had made it clear at the February 2 hearing that, but for the agreement of the UST to a short continuance, the court would have dismissed or converted at the February 2 hearing.

Debtor's counsel was surprised by the court's decision to take live testimony at the February 9 hearing. In fact, the court's local rules provide that the court may allow live testimony at a hearing on a motion, but that, "[w]hen the court intends to take such testimony, it will give the parties 2 days

17

notice of its intention, if possible, or may grant such a continuance as it may deem appropriate." LBR 9013-1(i)(1). The record does not show that notice was given.

However, when the hearing was continued to February 9, the parties waived notice of the hearing. Further, advance notice of the evidentiary hearing was not possible in this case. The court explained that it was taking testimony as a result of debtor's assertion for the first time the morning of the hearing that his businesses were not operating and therefore did not need to be insured. Thus, the court allowed Au to testify as to debtor's representations at the initial debtor interview regarding the activity of the businesses and would have allowed debtor to testify about the businesses had he been there. Because debtor did not raise the factual issue of whether the businesses were operational until the morning of the hearing, the bankruptcy court did not err in taking evidence on the issue without two days' notice.

Debtor also argues that the court erroneously cut off his questioning of Au, thereby denying him due process. Au testified that he had advised debtor at the initial debtor interview of the need for liability insurance on the businesses, but he was not certain whether he had sent a follow-up email to debtor listing that requirement. Although debtor's argument is not clear, it appears that debtor wanted to question Au about the necessity of liability insurance for these two business entities as opposed to casualty or other types of insurance.

There is no prejudice shown from the court's failure to allow the additional testimony. Debtor must show prejudice from

18

any procedural deficiencies. See Rosson, 545 F.3d at 776-77; Rule 9005. The court found that liability insurance was appropriate; debtor did not have liability insurance or any other insurance on the businesses. The court did not deprive debtor of due process in failing to allow additional questioning on this issue.

2. The panel may affirm on any basis supported by the record

Even if there were error in the court's finding that debtor failed to maintain appropriate insurance on his businesses, which constituted cause for dismissal or conversion under § 1112(b)(4)(C), the panel can affirm on any basis supported by the record. See Brown v. State Bar of Ariz. (In re Bankruptcy Petition Preparers), 307 B.R. 134, 140 (9th Cir. BAP 2004) (a reviewing court may affirm on any basis supported by the record); Khan, 2012 WL 2043074, at *7.

The UST presented ample evidence to support a finding of cause for dismissal or conversion. First, there is no dispute that debtor failed timely to make his UST quarterly fees payment; in fact, he did not tender payment until the day of the hearing. Debtor had been advised on January 6, 2016, that the fees were due; he was advised at the February 2, 2016, hearing that the fees were not paid; he was advised again in an email on February 2, 2016, that the fees needed to be paid. By late in the day on February 8, 2016, debtor's counsel advised the UST that he was still "waiting on client to provide proof of payment." UST's Supplemental Statement in Support of Motion to Dismiss or Convert, Exh. 2 to Declaration of Everett L. Green.

Even if, as debtor argues, the court had granted an

19

extension of time for payment, debtor still did not get the payment to the UST by that deadline, instead waiting to deliver the check to the UST at the February 9 hearing.

That failure timely to pay the UST fees alone is cause for dismissal or conversion under § 1112(b)(4)(K) and supports the decision to convert. The court could have raised failure to pay the quarterly fees sua sponte. Leeward Subdivision Partners, LLC v. GDR Lending, LLC (In re Leeward Subdivision Partners, LLC), BAP No. WW-10-1060-HRuJu, 2010 WL 6259983 (9th Cir. BAP 2010); § 105(a) (court may, sua sponte, take any action "necessary or appropriate to enforce or implement court orders or rules"). The court did not err in finding cause for conversion based on the failure timely to pay the UST quarterly fees.

In addition, the court was concerned that debtor had two failed bankruptcy cases in the year before he filed this chapter 11 case. It was concerned that, despite the UST's motion to dismiss filed on November 4, 2015, debtor still had not provided a number of items requested by the UST by the time of the second hearing on the motion on February 2, 2016. This included his monthly operating reports for October 2015, November 2015, and December 2015, each of which was due by the 15th of the month following the month that was the subject of the report. LBR 2015-2(b). Debtor did not provide a number of the items, including the operating reports, until the eve of the February 9 hearing, long after they were due.

That failure timely to provide information reasonably requested by the UST, coupled with debtor's history of failed

20

cases, provided cause for dismissal or conversion under § 1112(b)(4)(H); failure to timely file the operating reports provided cause for dismissal or conversion under § 1112(b)(4)(F). The fact that debtor finally, four months into the case and on the eve of the final hearing, provided much of the information does not mean that the information was timely provided.

There were multiple grounds supporting the bankruptcy court's decision to convert this case for cause.

CONCLUSION

The bankruptcy court did not abuse its discretion in converting debtor's chapter 11 case to a case under chapter 7. Debtor was given adequate notice of the basis for and an opportunity to be heard on the UST's motion.

Therefore, we AFFIRM.

21