**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

CONSERVATION NORTHWEST;
GIFFORD PINCHOT TASK FORCE;
ENVIRONMENTAL PROTECTION
INFORMATION CENTER; KLAMATH
FOREST ALLIANCE; UMPQUA
WATERSHEDS INC.; SISKIYOU
REGIONAL EDUCATION PROJECT;
KLAMATH-SISKIYOU WILDLANDS
CENTER; OREGON WILD; AMERICAN
LANDS ALLIANCE; CENTER FOR
BIOLOGICAL DIVERSITY;
NORTHCOAST ENVIRONMENTAL
CENTER,
           *Plaintiffs-Appellees*,

v.

HARRIS SHERMAN; MARCILYNN
BURKE; TERRY RABOT; UNITED
STATES FOREST SERVICE; BUREAU
OF LAND MANAGEMENT; U.S. FISH
AND WILDLIFE SERVICE,
           *Defendants-Appellees*,

D.R. JOHNSON LUMBER COMPANY,
      *Intervenor-Defendant-Appellant*.

No. 11-35729

DC No.
2:08-cv-1067-
JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted
October 9, 2012—Seattle, Washington

Filed April 25, 2013

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Environmental Law

The panel reversed the district court's order approving a consent decree arising from a settlement between environmental groups and federal agencies concerning changes to the Survey and Manage Standard of the Northwest Forest Plan.

The panel held that it was an abuse of discretion for the district court to approve the consent decree in its current form. The panel held that a district court abuses its discretion when it enters a consent decree that permanently and substantially amends an agency rule that would have

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

otherwise been subject to statutory rulemaking procedures. The panel concluded that because the consent decree allowed for substantial, permanent amendments to the Survey and Manage Standard of the Northwest Forest Plan, it impermissibly conflicted with laws governing the process for such amendments. Finally, the panel held that the issue of whether the Oregon and California Railroad and Coos Bay Wagon Road Grants Land Act precluded application of the Survey and Manage Standard to certain timberlands was not adequately raised below, and thereby waived.

## COUNSEL

Scott W. Horngren (argued), American Forest Resource Council; Shay S. Scott, Haglund Kelley Jones & Wilder LLP, Portland, Oregon, for Intervenor-Defendant-Appellant.

John L. Smeltzer (argued), Attorney, Ignacia S. Moreno, Assistant Attorney General, and David C. Shilton, Attorney, Environmental & Natural Resources Division, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

Peter M.K. Frost (argued), Western Environmental Law Center, Eugene, Oregon, for Plaintiffs-Appellees.

**OPINION**

TASHIMA, Circuit Judge:

We must decide whether a district court may approve resolution of litigation involving a federal agency through a consent decree, which substantially and permanently amends regulations that the agency could only otherwise amend by complying with statutory rulemaking procedures. Conservation Northwest and a coalition of other environmental groups ("Plaintiffs") sued the Bureau of Land Management ("BLM"), Forest Service, and Fish and Wildlife Service (collectively, the "Agencies"), challenging changes to the Survey and Manage Standard ("Survey and Manage" or the "Standard") of the Northwest Forest Plan ("NFP"). Plaintiffs and the Agencies (together, "Appellees") negotiated a settlement which the district court approved and entered in the form of a consent decree. Defendant-Intervenor D.R. Johnson Lumber Company ("D.R. Johnson") appeals from the district court's approval of the consent decree contending that it was an abuse of discretion because (1) the consent decree conflicts with applicable law by amending Survey and Manage without following applicable procedural requirements, and (2) its application to lands subject to the Oregon and California Railroad and Coos Bay Wagon Road Grants Land Act ("O & C Act") violates the terms of that Act. We have jurisdiction under 28 U.S.C. § 1291. We conclude that D.R. Johnson's first argument is meritorious, but that its second argument was waived. Accordingly, we reverse the district court.

## I. Factual and Procedural Background

This is another case in the extensive and growing litigation saga of the NFP.  *See, e.g.*, *Conservation Nw. v. Rey*, 674 F. Supp. 2d 1232, 1236–41 (W.D. Wash. 2009); *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549 (9th Cir. 2006); *Nw. Ecosystem Alliance v. Rey*, 380 F. Supp. 2d 1175, 1181–84 (W.D. Wash. 2005) ("*NEA*"); *Seattle Audubon Soc'y v. Lyons*, 871 F. Supp. 1291, 1300–02 (W.D. Wash. 1994), *aff'd*, 80 F.3d 1401 (9th Cir. 1996).  The NFP itself was the product of extensive litigation and political controversy in the 1990s surrounding the health of the old growth forests of the Pacific Northwest, it was intended as "a truce between conservationists and logging concerns." *Conservation Nw.*, 674 F. Supp. 2d at 1236–37.  It is intended to serve the twin goals of protecting the long-term ecological health of the forests and providing for sustainable timber production, and so requires a "balancing act between commercial use and conservation."  *Id*. at 1238.

The NFP applies to approximately 24.5 million acres of federal land between San Francisco and the Canadian border, and divides that land into "Reserves," "Adaptive Management" areas, and "Matrix" areas.  Most commercial logging takes place in "Matrix" areas.  The Agencies' management of these lands is also governed by federal statutes including the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), the Endangered Species Act ("ESA"), and the Federal Land Policy Management Act ("FLPMA").  Approximately ten percent of NFP land is also subject to the O & C Act.

Survey and Manage is one part of the NFP.  It was adopted to assist the Agencies in assessing the impact of

logging on approximately 400 little-known but ecologically crucial species.[1]   The Standard requires the Agencies to manage known sites where these species are found, conduct surveys for their presence prior to ground-disturbing activities, locate high priority sites for hard-to-find species, and conduct general regional surveys to learn more about the least-known species.

Based on their experience of the cost and complexity of implementing Survey and Manage during its first several years, the Agencies sought to amend the Standard in 2001. This prompted resistance from both commercial logging and conservation interests.  *See Douglas Timber Operators v. Rey*, No. 01-63788-AA (D. Or. 2001).  That litigation ended with a settlement in which the Agencies agreed to go back to the drawing board to consider eliminating the Standard in its entirety.  *See id*.

In 2004, the Agencies issued another environmental impact statement ("EIS") and accompanying record of decision ("ROD"), this time opting to eliminate Survey and Manage.  *NEA*, 380 F. Supp. 2d at 1183.  This action again sparked litigation, and in *NEA* the court found six violations of NEPA, set aside the 2004 ROD, reinstated the 2001 ROD, and enjoined authorization of logging on projects that were not in compliance with that earlier ROD.  *NEA v. Rey*, 2006 WL 44361, at *9 (W.D. Wash. Jan. 9, 2006).

---

[1] This list includes fungi, lichens, bryophytes, vascular plants, mollusks, amphibians, arthropods, and one mammal.  "Although charismatic megafauna they are not," these organisms "are essential for the health of forests."  *Conservation Nw.*, 674 F. Supp. 2d at 1238 n.5.

In 2001, the Agencies also attempted to downgrade and then remove the red tree vole from Survey and Manage without using formal amendment procedures mandated by FLPMA. *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 553, 562–63 (9th Cir. 2006). In *Boody*, we concluded that the BLM had impermissibly "changed the terms and conditions of [Survey and Manage] without complying with [the procedural requirements of FLPMA]." *Id*. at 556.

In 2007, the Agencies issued their Final Supplemental EIS and accompanying ROD ("2007 ROD"). In these documents, the Agencies again opted to eliminate Survey and Manage. *Conservation Nw.*, 674 F. Supp. 2d at 1240. The present litigation ensued when Plaintiffs challenged this action, alleging violations of NEPA, NFMA, FLPMA, and the ESA. *Id*. at 1240–41. D.R. Johnson intervened as a defendant. *Id*. at 1241. Plaintiffs moved for partial summary judgment on their NEPA claims, and D.R. Johnson and the Agencies opposed that motion and cross-moved for summary judgment themselves. *Id*.

After comprehensive analysis of Plaintiffs' NEPA claims, the district court found four NEPA violations. *Id*. at 1244–53. Noting the "highly complex issues at stake, and the procedural posture" after partial summary judgment, the court declined to decide on a remedy at that time. *Id*. at 1257.

After lengthy negotiations, the Agencies and Plaintiffs filed a proposed settlement agreement detailing how Survey and Manage would operate going forward. The settlement includes a lengthy description of "New Exemptions from Pre-disturbance Surveys," and a list of "Species and Category Assignment[s]," including an explanation of new

management requirements for certain species. D.R. Johnson objected that the settlement modified the Standard without complying with statutorily mandated public-participation procedures, but the district court rejected this contention and entered the settlement as a consent decree. The court cited *Turtle Island Restoration Network v. U.S. Department of Commerce*, 834 F. Supp. 2d 1004 (D. Haw. 2011), explaining that its entry of the consent decree "invoke[d] a judicial act, not an agency act," and that the general rules applicable to agencies were therefore not relevant. D.R. Johnson timely appeals.

## II. Discussion

D.R. Johnson contends that the district court abused its discretion by entering a consent decree that effectively amended Survey and Manage without going through procedures required by NEPA, FLPMA, NFMA, and their implementing regulations. Appellees respond that, because the consent decree was a "judicial act," procedural requirements that would otherwise govern agency action are inapplicable.[2] D.R. Johnson further argues that application of the consent decree to lands covered by the O & C Act would

---

[2] Appellees also argue that D.R. Johnson should be judicially estopped from challenging the consent decree on the ground that it was party to the stipulated modifications to the injunction issued in *NEA*. We disagree. D.R. Johnson did not take an explicit position with regards to the proper scope of the district court's power to modify its injunction in *NEA*, so there are no grounds for estopping D.R. Johnson from making its argument now. *See Reed Elsevier, Inc. v. Muchnik*, 130 S. Ct. 1237, 1249 (2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750, 751 (2001)).

violate that Act.[3]  Appellees reply that D.R. Johnson waived this argument by failing to raise it adequately before the district court.

We review a district court's approval of a consent decree for abuse of discretion. *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1165 (9th Cir. 2012).  "Abuse of discretion" means that a decision rests on a clearly erroneous finding of material fact or is the result of a failure to apply the correct law. *Id.*; *see also United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). We review conclusions of law *de novo*. *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002).

## A.  Procedural Requirements and Consent Decrees

A consent decree is a hybrid; it is both a settlement and an injunction. *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 n.10 (1975) ("Consent decrees and orders have attributes both of contracts and of judicial decrees or . . . administrative orders.").  This "dual character . . . has resulted in different treatment for different purposes." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986).  Although a consent decree typically represents "an amalgam of delicate balancing, gross approximations, and rough justice," and "need not impose all the obligations authorized by law," *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (internal quotation marks omitted), a district court may not approve a consent decree that "conflicts

---

[3] D.R. Johnson also urges us to rule on the correctness of one sentence of the district court's order granting partial summary judgment.  Because we reverse this order on other grounds, we need not address this argument.

with or violates" an applicable statute, *Local 93*, 478 U.S. at 526.

In *Boody*, we adopted a strict interpretation of when the BLM must follow formal procedures in the context of amending Survey and Manage.   468 F.3d at 556.   We explained that under FLPMA, "if BLM wishes to change a resource management plan, it can only do so by formally amending the plan pursuant to 43 C.F.R. § 1610.5-5." *Id*.  In that case, the BLM had first issued a memorandum downgrading the Survey and Manage classification of the red tree vole from Category C to Category D, and subsequently issued a second memorandum removing the vole's Survey and Manage designation entirely. *Id*. at 553.  We rejected BLM's argument that this decision to downgrade the vole's status fit within the scope of simple plan "maintenance," which could proceed pursuant to § 1610.5-4, and without formal amendment. *Id*. at 556–58.  We found that the agency action should have followed the process described in § 1610.5-5, and went on to hold that "[b]ecause the [changes at issue] trigger[ed] the § 1610.5-5 requirements under FLPMA, they also trigger[ed] the NEPA requirements under 40 C.F.R. § 1502.9(c)(1)(i)." *Id*. at 561.  We explained that enforcement of a low threshold to trigger formal amendment procedures

> ensure[s] that whenever resource management plans are changed in any meaningful way, the changes must be made via amendment (i.e., supported by scientific environmental analysis and public disclosure).  This is consistent with FLPMA's requirement that BLM ensure the views of the general public and third-party

> participation are adequately incorporated into the land planning process.

*Id*. at 557 (internal quotation marks omitted). We stated that the "BLM *must* amend a management plan when an action is proposed that changes either the scope of resource uses or the terms, conditions and decisions of the plan." *Id*. at 556 (internal quotation marks omitted). While *Boody* did not involve changes enacted through a consent decree, it nonetheless informs our understanding of the procedural issues in the case at bench.

Our decision in *United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008), is also instructive. In *Carpenter*, we held that the Attorney General's decision to settle litigation "without complying with the procedural mechanisms . . . set forth in the FLPMA" was reviewable. *Id*. at 1241–42. That we refrained from passing on the merits of the Attorney General's action in that case does not undermine the conclusion that we are bound to consider procedural requirements in the context of an agency's voluntary resolution of litigation. *See id*. at 1242. Nor does the fact that *Carpenter* involved a settlement as opposed to a consent decree render its holding inapposite. *See Oregon*, 913 F.2d at 580 ("A consent decree is essentially a settlement agreement subject to continued judicial policing.") (internal quotation marks omitted). That consent decrees involve an additional layer of "judicial action" does not mean that we must ignore the many ways in which they resemble settlements. *See Local 93*, 478 U.S. at 519.

Our recent decision in *Turtle Island* lends further support to the conclusion that procedural requirements remain relevant in the context of consent decrees. In that case, the

National Marine Fisheries Service had amended a Fishery Management Plan to remove certain set limits and increase the annual incidental take limit on loggerhead sea turtles. 672 F.3d at 1163. Environmental plaintiffs challenged the changes to the rule, and eventually entered an agreement with the defendants to vacate those portions of the amendment that raised the take limit on loggerhead turtles while the agency undertook further action regarding that limit. *Id*. at 1163–64. The Hawaii Longline Association, which had intervened as a defendant, challenged the consent decree on the ground that it violated "federal law by allowing the National Marine Fisheries Service to change duly promulgated rules without following [applicable] procedural rulemaking requirements." *Id*. at 1162. We observed that the challenged consent decree "merely vacated a portion of a regulation and temporarily reinstated the relevant prior portion." *Id*. at 1166. That the decree "merely temporarily restore[d] the *status quo ante* pending new agency action and [did] not promulgate a new substantive rule" was central to our decision to resolve that case on the "narrower" ground that the relevant statute did not preclude the use of consent decrees in the agencies' resolution of litigation. *Id*. at 1167. We did recognize, however, the existence of a "broader issue regarding applicability of statutory rulemaking procedures to judicial acts in general" that we found unnecessary to address directly in that case. *Id*. It follows that where a consent decree *does* promulgate a new substantive rule, or where the changes wrought by the decree are *permanent* rather than temporary, the decree may run afoul of statutory rulemaking procedures even though it is in form a "judicial act." *Id*. We therefore hold that a district court abuses its discretion when it enters a consent decree that permanently and substantially amends an agency rule that would have otherwise been subject to statutory rulemaking procedures.

### B.  The Specific Consent Decree in This Case

We now turn to an analysis of the consent decree before us in this case.  After *Boody*, it is indisputable that the Agencies would have had to go through formal procedures if they had sought to implement the changes to Survey and Manage contained in the consent decree on their own.  The decree includes changes to species classifications and establishes new exemptions from pre-disturbance surveys; it does "nothing short of amend" Survey and Manage.  *See Boody*, 468 F.3d at 556–57 (internal quotation marks omitted).

This consent decree also goes further than the one that we approved in *Turtle*.  672 F.3d at 1164.  As a result, "the practical effect of the district court's order [there was] not to affect the [challenged] [r]ule . . . except to reduce the incidental take limit for loggerhead turtles back to the pre-existing 2004 limits."  *Id*.  The consent decree was simply a stop-gap measure while the agencies amended their regulations through existing administrative procedures.  *Id.* at 1167 ("[T]he Consent Decree merely *temporarily* restores the *status quo ante pending new agency action . . . .*" (emphasis added)).

By contrast, the consent decree in this case sets the rules for Survey and Manage unless and until the Agencies decide to conduct further analysis and decision making.  If the Agencies are satisfied with the version of the Standard as amended by the consent decree, they could simply let it stand indefinitely.

Appellees argue that this is not a problem because the compromise reached in the consent decree represents the

implementation of those portions of the 2007 ROD that survived the district court's order granting summary judgment on Plaintiffs' NEPA claims. Appellees argue further that because each provision of the consent decree was contained within the 2007 ROD, which had undergone NFMA and FLPMA amendment proceedings, with notice and comment and consideration of alternatives, the provisions of the consent decree should be approved as the result of the amendment process. Finally, they suggest that because the changes worked in the consent decree are a "lesser included" subset of the 2007 ROD's proposed alternative of eliminating Survey and Manage altogether, it was permissible for the district court to approve them.

While these arguments have some intuitive appeal, we must reject them. The district court concluded that the Agencies' process as a whole had violated NEPA by, among other things, failing to include an alternative that truly "depict[ed] accurately the Agencies' present course of action." *Conservation Nw.*, 674 F. Supp. 2d at 1244–47 (internal quotation marks omitted). Analysis of the "no-action alternative" is at the heart of the NEPA process; thus, failure to provide a valid one casts a shadow over the process as a whole. *Id*. at 1244. This failure not only rendered the process defective under NEPA, but also infected the public notice and comment prescribed by NFMA and FLPMA, because the public should have been afforded an opportunity to comment on all alternatives that the Agencies were required by law to consider. *See Boody*, 468 F.3d at 556 (views of public must be adequately incorporated into process).

Appellees' "lesser included" argument is similarly unconvincing. Under *Boody*, any substantial change to

Survey and Manage triggers procedural requirements, whether the change would reduce coverage to a "lesser included" version of the standard's protections, as was the case in *Boody*, or scale back from a total repeal of Survey and Manage, as Appellees suggest is permissible here.  468 F.3d at 556–58; *see also City of N.Y. v. Clinton*, 985 F. Supp. 168, 178–79 (D.D.C. 1998), *aff'd*, 524 U.S. 417 (1998) ("[T]he laws that resulted . . . were different from those consented to . . . . There is no way of knowing whether those laws, in their truncated form, would have received the requisite support . . . ." ).

Because the consent decree in this case allowed the Agencies effectively to  promulgate a substantial and permanent amendment to Survey and Manage without having followed statutorily required procedures, it was improper.

## C.  The O & C Act

D.R. Johnson also objects to the consent decree on the basis that the O & C Act precludes application of Survey and Manage to O & C timberlands.  Appellees respond that D.R. Johnson waived this issue by failing to raise it adequately below.

"We apply a general rule against entertaining arguments on appeal that were not presented or developed before the district court."  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (internal quotation marks omitted).  "This principle accords to the district court the opportunity to reconsider its rulings and correct its errors." *Id*. (internal quotation marks omitted).  This rule also ensures that issues raised for the first time on appeal are not decided where "there may be facts relevant to the issue which were

not developed in the record." *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir. 1985).

In the proceedings below, D.R. Johnson only mentioned its theory that the O & C Act precluded application of Survey and Manage to O & C lands in its cross-motion for summary judgment, as part of its argument about the appropriate remedy. The argument was buried in the middle of a section entitled "A Permanent Injunction is not Warranted," as part of a broader argument about weighing the equities. The district court never ruled on that issue when it granted Plaintiffs' partial motion for summary judgment, and D.R. Johnson failed to re-raise its argument when it opposed Appellees proposed consent decree. As a result, the order from which D.R. Johnson appeals contains no discussion of this argument. We therefore conclude that D.R. Johnson failed properly to raise the issue below; consequently, it is waived.

### III.  Conclusion

Because the consent decree allows for substantial, permanent amendments to Survey and Manage, it impermissibly conflicts with laws governing the process for such amendments. It was therefore an abuse of discretion for the district court to approve it in its current form. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**