FILED

AUG 12 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DONALD HUGH NICHOLS and JANE ANN NICHOLS,<br><div align="right">Debtors.</div> | BAP No. AZ-20-1032-TaLB<br><br>Bk. No. 4:18-bk-09638-BMW |
| DONALD HUGH NICHOLS; JANE ANN NICHOLS,<br><div align="right">Appellants,</div><br>v.<br>MARANA STOCKYARD & LIVESTOCK MARKET, INC.; THE PARSONS COMPANY; CLAY PARSONS; KAREN PARSONS; ARIZONA DEPARTMENT OF REVENUE; JILL H. FORD, Chapter 7 Trustee,<br><div align="right">Appellees.</div> | OPINION |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda Moody Whinery, Bankruptcy Judge, Presiding

APPEARANCES:
German Yusufov argued for appellants; D. Alexander Winkelman argued for appellees Marana Stockyard & Livestock Market, Inc., The Parsons Company, Clay Parsons, and Karen Parsons

Before: TAYLOR, LAFFERTY, and BRAND, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

INTRODUCTION

Chapter 13[1] debtors Donald Hugh Nichols and Jane Ann Nichols appeal from the bankruptcy court's order denying their § 1307(b) dismissal motion and granting a § 1307(c) and (e) conversion motion. Debtors contend that the bankruptcy court abused its discretion in doing so, arguing that: (1) their right to dismiss is absolute; and (2) even if the right is not absolute, there were no grounds for conversion. We disagree with their arguments and perceive no abuse of discretion. We AFFIRM.

FACTS

Prepetition, Debtors' son, Seth Nichols, pled guilty to bank fraud under 18 U.S.C. § 1344. His victims, Marana Stockyard & Livestock Market, Inc. ("Marana") and its owners, Clay and Karen Parsons (the "Parsons" and, together with Marana, "Creditors"), received an 18 U.S.C. § 3663A restitution award. The plea agreement provides that Debtors would pay partial restitution on behalf of their son through transfer or liquidation of their home and other real property ("Properties"). Indeed, they transferred title to the Properties to the Creditors almost six months before Seth Nichols signed the plea agreement.

But Debtors were not signatories to the plea agreement; they alleged that the Parsons fraudulently induced them to transfer their Properties.

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

And the Creditors did not agree that Seth Nichols acted alone; they alleged that Debtors were involved in their son's criminal activity. The plea agreement was not the end of litigation.

Marana and The Parsons Company filed a state court complaint against Debtors and related entities seeking recovery based on fraud, conversion, and aiding and abetting tortious acts related to the bank fraud ("Civil Case"). Debtors then: (1) filed a third party complaint against the Parsons in which they sought rescission for fraud in the inducement of the transfers of the Properties; (2) filed a notice of lis pendens; and (3) recorded the lis pendens against the Properties. The Parsons demanded its immediate expungement.

Debtors did not meet the demand; instead they filed a chapter 13 petition and a chapter 13 plan ("Plan"). Having obtained the safe harbor provided by a bankruptcy case and the automatic stay, they then dawdled for over seventeen months. They took no steps towards plan confirmation or Bankruptcy Code compliance. Their only affirmative steps engendered delay in both the bankruptcy and Civil Case proceedings.[2]

Despite a Plan objection filed by the chapter 13 trustee raising several impediments to confirmation, including: (1) Debtors' failure to file tax returns for 2014 through 2017; (2) Debtors' failure to provide information

---

[2] For example, they released the lis pendens only at the eleventh hour during an evidentiary hearing on Creditors' motion seeking its expungement.

regarding their business operations; (3) Debtors' failure to file business operating reports; and (4) the Plan's failure to provide for priority claims and to satisfy the liquidation analysis, feasibility, and projected disposable income requirements of chapter 13, Debtors never amended their facially non-confirmable Plan.

Debtors ultimately attempted to justify their sloth by reference to federal criminal charges filed post-petition against Hugh Nichols for bank fraud and conspiracy to commit bank fraud ("Criminal Case")[3] and alleged advice of their criminal and bankruptcy counsel. And the Trustee did not immediately press the point; she continued the § 341(a) meeting of creditors numerous times. But the case went nowhere, and an even potentially confirmable plan, one that paid creditors the minimum required by the evidence in the Debtors' schedules, was never proposed.

Debtors also stalled the Civil Action. They opposed Creditors' stay relief motion requesting liquidation of claims in the Civil Case, and Debtors' co-defendants—most of which are entities Debtors own and control—obtained a six-month stay from the state court.

So, nine months into the chapter 13 case, Debtors still had not filed required tax returns or otherwise made a meaningful effort to confirm a plan. Creditors, thus, sought conversion to chapter 7 ("Conversion

---

[3] Theft of livestock, wire fraud, and witness retaliation charges under 18 U.S.C. §§ 667, 1343, and 1513(e) were added five months later.

4

Motion") under § 1307(c) and (e), alleging, *inter alia*, undue delay, ineligibility for chapter 13 relief, and bad faith conduct.

The Trustee joined the Conversion Motion on the bases that: (1) Debtors had not addressed most of the issues raised in her Plan objection; (2) Debtors had not advanced the case; (3) Debtors had not proposed a confirmable plan; (4) Debtors had not filed required tax returns; (5) Debtors had not provided information needed to analyze the feasibility or propriety of the Plan; (6) Debtors had not met their obligations to creditors and the estate; and (7) creditors were being prejudiced by case stagnation.

Debtors broadly opposed the Conversion Motion; the defenses to their obvious inaction included the assertion that case delays were attributable to their Criminal Case rather than bad faith conduct. Concurrently, they filed a motion making the extraordinary request that the bankruptcy court stay or abstain from all bankruptcy proceedings pending the outcome of the Criminal Case ("Motion for Stay"). Creditors filed an opposition.

The bankruptcy court held a hearing on the Motion for Stay and Conversion Motion and denied the Motion for Stay. In addition, it conditionally granted the Conversion Motion: (1) finding cause for conversion under § 1307(c), including unreasonable delay that is prejudicial to creditors; (2) finding that conversion was in the best interest

5

of creditors and was required under § 1307(e) given Debtors' failure to file tax returns; (3) at Debtors' counsel's request, giving Debtors thirty days to submit tax returns and a stipulated order of confirmation ("SOC") to avoid conversion; and (4) authorizing the Trustee to upload an order converting the case if Debtors failed to complete such tasks.

Debtors appealed the bankruptcy court's denial of the Motion for Stay to the United States District Court for the District of Arizona. While the district court appeal was pending, Debtors filed a motion to dismiss their chapter 13 case under § 1307(b) ("Dismissal Motion") "as a matter of precaution, to prevent any potential claim of waiver of the right to dismiss." But they did not request a hearing until after the district court denied their motion for a stay pending appeal.[4]

Creditors and the Arizona Department of Revenue opposed the Dismissal Motion and urged conversion. They argued that case dismissal would cause a manifest injustice and substantial harm to creditors and that Debtors had been acting in bad faith.

The bankruptcy court then held a joint hearing on the Conversion Motion and Dismissal Motion. As of the hearing date, Debtors still had not: (1) amended the Plan or submitted a proposed SOC to the Trustee, despite the bankruptcy court delaying entry of a conversion order, at Debtors'

---

[4] The district court later affirmed the bankruptcy court. *Nichols v. Marana Stockyard & Livestock Mkt. Inc. (In re Nichols)*, 615 B.R. 588 (D. Ariz. 2020).

counsel's request, to allow them time to do so; (2) filed their delinquent tax returns; (3) filed operating reports for their businesses; (4) provided the Trustee with her requested disclosures; and (5) filed outstanding Transaction Privilege Tax or withholding returns for their businesses.

Following the hearing, the bankruptcy court entered its order denying the Dismissal Motion and granting the Conversion Motion ("Order"). Citing *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008), the bankruptcy court found that Debtors' § 1307(b) right to dismiss is not absolute and does not supersede the conversion options available under § 1307(c) or (e). Here, the bankruptcy court concluded, Debtors' delays were not excused by the concurrently pending Criminal Case. While fighting to stay in chapter 13, they did nothing more than inject delay in the bankruptcy and Civil Case. Further, they failed to file numerous tax returns by the § 1308(a) deadline. Thus, the bankruptcy court found that "[t]he Debtors have essentially used Chapter 13 to hide from creditors during the pendency of the criminal proceedings. Such conduct constitutes an abuse of the bankruptcy process, justifying denial of the Debtors' Motion to Dismiss under § 1307(b)." It concluded that conversion was in the best interest of creditors and appropriate under §§ 1307(c) and (e).

Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction to determine the Conversion

7

Motion and Dismissal Motion under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). *See Beatty v. Traub (In re Beatty)*, 162 B.R. 853, 857-58 (9th Cir. BAP 1994) (holding conversion is not effective on oral ruling; rather it is effective and operative on the date of entry on the docket), *overruling recognized on other grounds by In re Rosson*, 545 F.3d 764. We have jurisdiction under 28 U.S.C. § 158.

<div align="center">ISSUE</div>

Did the bankruptcy court abuse its discretion when it granted Creditors' Conversion Motion and denied Debtors' Dismissal Motion?

<div align="center">STANDARDS OF REVIEW</div>

We review the bankruptcy court's decision to deny a § 1307(b) request for dismissal of a chapter 13 case and to convert the case to chapter 7 for an abuse of discretion. *In re Rosson*, 545 F.3d at 771. The bankruptcy court abuses its discretion if it fails to identify or apply the correct legal rule to the relief requested or if its application of the correct legal standard was illogical, implausible, or without support in the record. *Father M v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Or.)*, 661 F.3d 417, 424 (9th Cir. 2011).

We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *In re Rosson*, 545 F.3d at 771. Its findings of fact are accorded considerable deference and are only clearly erroneous if we are left with a definite and firm conviction a mistake has been

<div align="center">8</div>

committed. *Anderson v. Bessemer City*, 470 U.S. 564, 573-75 (1985).

We may affirm on any basis supported by the record. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013).

DISCUSSION

Debtors argue for the first time on appeal that the bankruptcy court lacked authority to order conversion to chapter 7 under § 1307(c) and (e) in light of their § 1307(b) Dismissal Motion. They maintain that they have an absolute right to dismissal, despite Creditors' allegations of Debtors' abuse of process and failure to file the tax returns required under § 1308. In advancing this argument, they submit that *In re Rosson*, 545 F.3d 764, in which the Ninth Circuit held that a debtor's § 1307(b) right to dismiss is not absolute, must be deemed bad law as contradicted by preceding and subsequent United States Supreme Court authority in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007) and *Law v. Siegel*, 571 U.S. 415 (2014). We disagree. We also disagree with Debtors' alternative arguments that the bankruptcy court erred in determining conversion was warranted for Debtors' abuse of process and failure to file tax returns.

A. Debtors waived the argument that *Rosson* no longer controls, but we exercise our discretion to consider the issue.

Creditors initially contend that Debtors waived the argument that *Rosson* is no longer controlling law because they did not raise it below and, in fact, affirmed the validity of *Rosson.* We agree.

Debtors counter that they raised the issue in a footnote to their Dismissal Motion: "[i]t is questionable whether the exception created by [*Rosson*] is consistent with the statute." That footnote is far too cryptic and contrary to their subsequent arguments to have adequately raised the issue. *See Conservation Nw. v. Sherman*, 715 F.3d 1181, 1188 (9th Cir. 2013) (deeming appellant's argument waived as it was buried in the middle of a broader argument below such that the district court never ruled on it). Indeed, in the bankruptcy court, Debtors acknowledged twice in briefing and four times at a hearing that their right to a dismissal was limited by *Rosson*. And, at no time did they argue that any case contradicted or overruled *Rosson*.

And this failure is particularly troubling where the bankruptcy court ordered conversion before Debtors sought dismissal. Debtors avoided immediate conversion by asserting that they would file the required tax returns and remedy the Plan's serious defects. Instead, they did nothing except request dismissal.

As a general rule of waiver, we will not reverse the bankruptcy court "on the basis of a theory that was not raised below." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n.15 (9th Cir. 1991). But waiver is a discretionary determination, which allows us to reach issues not raised at the trial level in certain circumstances, including "when the issue presented is purely one of law and either does not depend on the factual record

developed below, or the pertinent record has been fully developed." *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985). Thus, though Debtors did not adequately raise the issue below, we exercise our discretion to consider whether *Rosson* is controlling law.

B. *Rosson*'s holding, that the right to dismissal has limits, is controlling.

There is no question that *Rosson* bound the bankruptcy court in the absence of a contrary decision of the Supreme Court. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987). And no one argues that the Supreme Court directly overruled *Rosson* or decided the particular issue it resolved. So, we must follow *Rosson* unless the Supreme Court has otherwise undercut its theory or reasoning in a way that is clearly irreconcilable with continued reliance on it. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). As explained below, the Supreme Court has not done so.

Section 1307 provides, in pertinent part, that

(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
(c) . . . [O]n request of a party in interest . . . and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

11

(1) unreasonable delay by the debtor that is prejudicial to creditors[.]

. . .

(e) Upon the failure of the debtor to file a tax return under section 1308, on request of a party in interest . . . and after notice and a hearing, the court shall dismiss a case or convert a case under this chapter to a case under chapter 7 of this title, whichever is in the best interest of the creditors and the estate.

§ 1307(b), (c)(1), and (e). Creditors rely on *Rosson* for the proposition that these statutes exist in equipoise such that dismissal was not required upon Debtors' request and conversion remained an option. Debtors argue that *Rosson* is inconsistent with Supreme Court cases in analogous situations, that § 1307(b) is the controlling statutory mandate, and that dismissal was the only appropriate option.

Debtors first focus on *Marrama*, where the Supreme Court interpreted § 706(a) rather than § 1307(b). But, as the *Rosson* Panel held, *Marrama*'s reasoning for its interpretation of § 706(a) instructs how § 1307(b) should be read.

In *Marrama*, a chapter 7 debtor attempted to hide a significant asset. 549 U.S. at 368. He filed a § 706(a) motion to convert his case to chapter 13, only after the chapter 7 trustee discovered his deceit. The bankruptcy court denied his motion due to his bad faith conduct. *Id.* at 369-70. The matter then wound its way to the Supreme Court.

As the Supreme Court observed, § 706(a) allows a chapter 7 debtor to

12

convert the case to chapter 13 at any time subject to conditions not present in the *Marrama* case. It further provides that "[a]ny waiver of the right to convert a case under this subsection is unenforceable." § 706(a). The Supreme Court consulted legislative history that described the § 706(a) right to convert as "absolute" but nevertheless held that the "reference to an 'absolute right' of conversion [wa]s more equivocal than" this language suggested. *Marrama*, 549 U.S. at 372. In particular, it identified the requirement in § 706(d) that the debtor be eligible to proceed under the chapter to which conversion was sought as an exception to the "absolute right" of conversion. *Id.*

Turning to § 706(d), the *Marrama* Court then examined a potential reason why the debtor would not qualify as a debtor under chapter 13: the ability of the bankruptcy court to convert or dismiss a case for cause under § 1307(c). *Id.* at 373. It concluded that the debtor's bad faith conduct was "cause" because bad faith debtors do not belong to "the class of 'honest but unfortunate debtors' that the bankruptcy laws were enacted to protect." *Id.* at 374 (alterations omitted) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). And it reasoned that a bad faith finding under § 1307(c) was "tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Id.* at 373–74. Thus, it held that § 706(d)'s requirement that a debtor be eligible under the chapter to which conversion was sought allowed the bankruptcy court to deny conversion to chapter 13. *Id.* at 374.

13

The *Marrama* Court also found that the bankruptcy court's refusal to convert the case was authorized under § 105(a) and might have been authorized under its inherent powers to sanction abusive litigation practices expeditiously. *Id.* at 375-76.

In *Rosson*, the Ninth Circuit Court of Appeals considered the effects of *Marrama* in the context of a bankruptcy court's sua sponte conversion of a chapter 13 case to chapter 7 "for cause" despite a pending § 1307(b) dismissal motion. The *Rosson* court held that after *Marrama*, "a debtor's right to voluntarily dismiss a Chapter 13 case under § 1307(b) is *not* absolute, but is qualified by an implied exception for bad-faith conduct or abuse of the bankruptcy process." *In re Rosson*, 545 F.3d at 767. *Rosson* pointed out:

> These two provisions [§ 1307(b) and(c)]—i.e., that the court "shall" dismiss a case on request of the Chapter 13 debtor, but that the court also "may" convert a Chapter 13 case to Chapter 7 "for cause"—can conflict where, on the one hand, a debtor requests voluntary dismissal, while, on the other hand, a party in interest or the trustee moves to convert—or the court, acting on its own, converts—the case to Chapter 7.

*Id.* at 771. But despite the mandatory versus permissive language of § 1307(b) and (c), respectively, *Marrama* requires that the debtor's § 1307(b) right to dismissal be qualified by the bankruptcy court's power to convert a case based on the debtor's bad-faith conduct or abuse of the bankruptcy process. *Id.* at 772, 774. It noted that the text of § 706(a) and § 1307(b) are

14

analytically indistinguishable. *Id.* at 773 (citing *Croston v. Davis (In re Croston)*, 313 B.R. 447, 451 (9th Cir. BAP 2004), *abrogated on other grounds by Marrama*, 549 U.S. 365). Thus, it reasoned that because *Marrama* rejected an "absolute" right theory as to § 706(a), the "absolute" right theory as to § 1307(b) must also be rejected. *Id.* at 773-74.

*Rosson* also cited to § 105(a) in discussing *Marrama*'s bad faith and abuse of process exceptions to the rights conferred on debtors in §§ 706(a) and 1307(b). 545 F.3d at 771 n.8, 773 n.12, 774. This analysis primarily centered on a holistic statutory construction of § 1307(b) and (c) to conclude that a debtor's § 1307(b) dismissal right is fairly limited by alternative "for cause" grounds of abuse of process or bad faith for conversion under § 1307(c).

In *Law*, the Supreme Court held that a trustee could not surcharge a debtor's exemption under its § 105(a) inherent equitable powers to contravene § 522(k), which prohibits the use of exempt property to pay administrative expenses. *Law*, 571 U.S. at 427-28. The *Law* Court distinguished *Marrama* because § 706(d) expressly conditioned conversion on a debtor's qualifications for relief under chapter 13. A chapter 7 debtor's bad faith conduct could prevent her eligibility as a chapter 13 debtor because § 1307(c) authorizes the bankruptcy court to dismiss or convert a case for cause, which includes bad faith. *See id.* at 425-26; *Marrama*, 549 U.S. at 372-75. *Law* characterized *Marrama*'s conclusion that a bankruptcy court

15

could deny dismissal pursuant to § 105(a) as "dictum." *Id.* at 426. But *Law* reinforced that § 105(a) could be used to avoid the "futile procedural niceties in order to reach more expeditiously an end result required by the Code," such as denying conversion when it is clear that the bankruptcy court would inevitably reconvert or dismiss the converted case for cause. *Id.*

In *Saris Realty, Inc. v. Bartlett (In re Bartlett)*, BAP No. CC-17-1364-LsTaL, 2018 WL 3468832 (9th Cir. BAP July 18, 2018), we observed that after *Law*, "the continued vitality of *Rosson* has its allies and opponents." *Id.* at *5. We then briefly discussed those allies and opponents. *See id.* (comparing its post-*Law* allies, *In re Brown*, 547 B.R. 846 (Bankr. S.D. Cal. 2016) and *In re Pustejovsky*, 577 B.R. 671 (Bankr. W.D. Tex. 2017), with its post-*Law* opponents, *Ross v. AmeriChoice Fed. Credit Union*, 530 B.R. 277 (E.D. Penn. 2015), *vacated and remanded sub nom. In re Ross*, 858 F.3d 779 (3d Cir. 2017), and *In re Sinischo*, 561 B.R. 176 (Bankr. D. Colo. 2016)). However, we declined to consider the "continued sturdiness of *Rosson*," *Bartlett*, 2018 WL 3468832 at *6, and disposed of the appeal on other grounds.

Here, we consider *Rosson*'s vitality; we agree with its allies—it is still good law. As aptly articulated in *Brown*, "[r]ather than undercutting *Rosson*'s analysis, *Law* actually confirms it." *In re Brown*, 547 B.R. at 851. Specifically, *Marrama*'s rejection of a chapter 7 debtor's absolute right to convert was based on a "holistic" interpretation of §§ 706(a), 706(d), and

16

1307(c) and the conclusion that § 706(a)'s seemingly absolute right to convert was equivocal. In *Law*, the Supreme Court emphasized that *Marrama*'s holding was not solely or primarily based on § 105(a). *Law*, 571 U.S. at 425-26. In fact, the *Law* Court labeled *Marrama*'s statements regarding § 105(a) as mere "dictum." *Id.* at 426. The *Law* Court explained:

> The question [in *Marrama*] was whether a debtor's bad-faith conduct was a valid basis for a bankruptcy court to refuse to convert the debtor's bankruptcy from a liquidation under Chapter 7 to a reorganization under Chapter 13. Although § 706(a) of the Code gave the debtor a right to convert the case, § 706(d) "expressly conditioned" that right on the debtor's "ability to qualify as a 'debtor' under Chapter 13." And § 1307(c) provided that a proceeding under Chapter 13 could be dismissed or converted to a Chapter 7 proceeding "for cause," which the Court interpreted to authorize dismissal or conversion for bad-faith conduct. In light of § 1307(c), the Court held that the debtor's bad faith could stop him from qualifying as a debtor under Chapter 13, thus preventing him from satisfying § 706(d)'s *express condition* on conversion.

*Id.* at 425-26 (citations omitted).[5]

---

[5] Debtors attribute too much to *Law*'s relegation of *Marrama*'s § 105(a) analysis to dictum. Specifically, they argue that because *Marrama*'s only reference to "abuse of process" appears in its discussion of § 105(a), *Rosson,* even if not overruled by *Law*, cannot be read to authorize a bankruptcy court to convert for cause under § 1307(c) based on an abuse of process, absent a separate finding of bad faith, when there is a pending § 1307(b) dismissal request.

Debtors ignore *Marrama*'s key holding that the bankruptcy court's bad faith

(continued...)

The *Rosson* court carried *Marrama*'s reasoning to its natural conclusion in interpreting § 706(a)'s chapter 13 analog, § 1307(b). As did the Supreme Court in *Marrama*, the Ninth Circuit read § 1307(b) and (c) to give these different subsections of the same statute importance in the situations to which they apply. When those situations converge with competing conversion and dismissal motions, each subsection should be given its proper significance. Section 1307(c) proffers a statutory basis to refuse to honor a § 1307(b) dismissal request, just as §§ 706(d) and 1307(c), read together, proffer a statutory basis to refuse to honor a § 706(a) conversion request.

We note that the Ninth Circuit has not directly addressed the continued vitality of *Rosson*. However, several post-*Law* cases have favorably cited *Rosson*'s holding that a debtor's § 1307(b) dismissal rights are qualified by the bankruptcy court's authority to deny dismissal for bad

---

[5](...continued)
finding was sufficient to deny conversion under § 706(a) because the finding would constitute cause to dismiss or reconvert the case under § 1307(c). A finding of an abuse of process similarly constitutes cause to dismiss or convert a case under § 1307(c); an individual who abuses the bankruptcy process is as unworthy to be classified as an "honest but unfortunate debtor[] that the bankruptcy laws were enacted to protect[,]" *Marrama*, 549 U.S. at 374 (citation and internal quotation marks omitted), as an individual who acts in bad faith during bankruptcy. Debtors provide no meaningful basis to distinguish between such individuals. Neither individual should be immune from the bankruptcy court's power to convert a case for cause under § 1307(c). *Rosson* thus appropriately held that either a bad faith or abuse of process finding of cause to convert under § 1307(c) may defeat a § 1307(b) motion.

18

faith conduct or to prevent an abuse of process. *See, e.g., Brown v. Billingslea (In re Brown)*, BAP No. SC-14-1388-JuKlPa, 2015 WL 6470940, *11 (9th Cir. BAP Oct. 26, 2015); *Dietlein v. Dietlein (In re Dietlein)*, 592 B.R. 864, 868 (D. Nev. 2018); *In re Malek*, No. 15-61179-13, 2018 WL 1750089, *3 (Bankr. D. Mont. Apr. 10, 2018).

More importantly, after *Law*, the Ninth Circuit in *Clark v. DeVries (In re Clark),* 652 F. App'x 543 (9th Cir. 2016) relied on *Rosson* in holding that a chapter 12 debtor did not have an absolute right to dismissal under § 1307(b)'s chapter 12 analog, § 1208(b), because the district court had the power to instead convert the case to chapter 7 pursuant to § 1208(d), which provides that a court "may" dismiss or convert a case "upon a showing that the debtor has committed fraud in connection with the case."

For these reasons, we hold that *Rosson* remains good law; a debtor's § 1307(b) right to dismissal is not absolute. In doing so, we acknowledge the tensions in the analysis. But given that *Law* merely suggests, rather than requires, consideration of a different result and given that the Ninth Circuit relied on *Rosson* after *Law*, we determine that the decision binds us here.

We also observe that limiting a chapter 13 debtor's § 1307(b) right voluntarily to dismiss a case when there is bad faith conduct or abuse of process warranting conversion is consistent with the objectives of the Bankruptcy Code and is otherwise sound statutory construction.

Congress has explicitly stated its intent to prevent mandatory

19

chapter 13 proceedings:

> As under [the Bankruptcy Act of 1898], chapter 13 is completely voluntary. This Committee [on the Judiciary] firmly rejected the idea of a mandatory or involuntary Chapter XIII in the 90th Congress. The Thirteenth Amendment prohibits involuntary servitude. Though it has never been tested in the wage earner plan context, it has been suggested that a mandatory chapter 13, by forcing an individual to work for creditors, would violate this prohibition. On policy grounds, it would be unwise to allow creditors to force a debtor into a repayment plan. An unwilling debtor is less likely to retain his job or to cooperate in the repayment plan, and more often than not, the plan would be preordained to fail.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 120 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 6080 (footnotes omitted). Section 1307(b) is one of several statutory safeguards Congress enacted to ensure that chapter 13 cases are purely voluntary proceedings. *See, e.g.,* §§ 303(a) (prohibiting the filing of an involuntary chapter 13 case against a debtor); 706(c) (prohibiting conversion of a chapter 7 case to chapter 13 without a debtor's consent); 1112(d) (prohibiting conversion of a chapter 11 case to chapter 13 without a debtor's consent); 1307(a) (providing a chapter 13 debtor with the right to convert to chapter 7 at any time); 1321 (providing a chapter 13 debtor with the exclusive authority to propose a plan). Section 1307(b) prevents a debtor from compelled chapter 13 servitude. Thus, the mandatory language of § 1307(b) is best understood as providing a chapter 13 debtor

with an absolute right to exit chapter 13.

But there is no indication in the legislative history that Congress intended to grant debtors who have abused the bankruptcy process an unqualified right to choose the means by which they exit chapter 13. After all, "the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." *Molitor v. Eidson (In re Molitor)*, 76 F.3d 218, 220 (8th Cir. 1996). Thus, § 1307(b) should not be used "as an escape hatch" by a dishonest debtor to avoid the repercussions of bad faith conduct or abuse of process once a § 1307(c) conversion motion is filed. *Id.*

Congress' involuntary servitude concern has no place in a chapter 7 case because a chapter 7 debtor is not compelled to pay future wages to a creditor in violation of the Thirteenth Amendment's involuntary servitude prohibition. *Cf. Toibb v. Radloff*, 501 U.S. 157, 165-66 (1991) (citing H.R. Rep. No. 95-595, at 120, as articulating Congress' concern with involuntary chapter 13 proceedings and holding chapter 11 proceedings do not involve the same concern). In fact, § 303(a) expressly permits creditors to file an involuntary chapter 7 against a person.

Thus, allowing the bankruptcy court to convert a chapter 13 case to chapter 7 for bad faith conduct, abuse of process, or a failure to file tax returns despite a debtor's § 1307(b) dismissal motion honors Congress'

intention of keeping chapter 13 proceedings voluntary while preserving the integrity of the bankruptcy system by allowing the bankruptcy court to address abusive behavior.

And Debtors' argument that § 1307(b) has preferred status based on its position in the statute is not supported by any rule of statutory construction. Instead, we are compelled to read the statute as a whole, to give meaning to all its provisions, and to aim for a coherent construction where facial differences exist. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). And, given this analysis, the fact that § 1307(b) contains a mandatory "shall" while § 1307(c) utilizes a permissive "may" does not compel a different result. Again, the only coherent way to give import to the entirety of the statute is to acknowledge the debtor's absolute right to exit chapter 13 while also acknowledging that the rights of creditors must be considered when the debtor acts in bad faith or abuses process; in such a case an exit to a chapter 7 case remains an option.

Under this analysis, it becomes clear that *Law* in no way controls the outcome here. This analysis does not require recourse to § 105 to avoid application of a Bankruptcy Code mandate. Instead, the analysis requires consideration of different subsections of the same statute and a reasoned analysis that provides each with an appropriate place in the statutory scheme.

22

C. The bankruptcy court did not err in finding abuse of process warranting conversion under § 1307(c).

The bankruptcy court's finding that conversion would prevent an abuse of process was not clearly erroneous. Debtors fought to remain in chapter 13 for seventeen months, yet they took no material steps to advance their case towards confirmation or to comply with the Bankruptcy Code. The only affirmative actions they took were designed to delay judicial proceedings. And when they missed the deadline to file tax returns, they made no effort to correct their delinquencies. Rather, they sought multiple stays of proceedings.

Debtors assert that their delays were excusable because they were allegedly unable to produce information required to move the bankruptcy case forward or to otherwise take affirmative actions without their criminal counsel first evaluating the ramifications of, and recommending, such actions. And, they argue, consistent with the advice of criminal counsel, they sought a stay of the bankruptcy proceedings. Debtors' arguments are not well-taken.

While a debtor may assert his Fifth Amendment privilege in a bankruptcy proceeding, *McCarthy v. Arndstein*, 266 U.S. 34, 41 (1924), he cannot assert it in a blanket fashion to "impede the basic bankruptcy administration of his case" without consequence, *McCormick v. Banc One Leasing Corp. (In re McCormick)*, 49 F.3d 1524, 1527 (11th Cir. 1995); *see also*

23

*In re Vaughan*, 429 B.R. 14 (Bankr. D.N.M. 2010) (converting chapter 11 case to chapter 7 under § 1112(b)(4)(H) where debtor refused to testify at a § 341 meeting of creditors after invoking his Fifth Amendment privilege and thereby failed to provide information reasonably requested by the United States Trustee). Further, we agree with the bankruptcy court that Debtors' requested stay would allow them to "use the Fifth Amendment as a shield, while impermissibly using the Bankruptcy Code as a sword with which to take unfair advantage of creditors." *Phillips v. First Nat. Ins. Co. of Am.*, Civ. No. H-10-3632, Adv. No. 10-03075, 2011 WL 2447954, at *2 (S.D. Tex. June 15, 2011); *see also In re Connelly*, 59 B.R. 421, 448 (Bankr. N.D. Ill. 1986).

During all of Debtors' stalling efforts, creditors have suffered as Debtors have not met their obligations to pay creditors or to propose even a facially confirmable plan. These facts provide ample support for the bankruptcy court's determination that conversion would prevent an abuse of process and be in the best interest of creditors.[6] Therefore, we perceive no error in the bankruptcy court's denial of Debtors' Dismissal Motion and grant of Creditors' Conversion Motion under § 1307(c).

---

[6] Debtors point out that the bankruptcy court did not hold an evidentiary hearing on whether they were abusing the bankruptcy process. To the extent they are suggesting error in the bankruptcy court's determination that there was sufficient evidence in the record to find an abuse of process without holding an evidentiary hearing, they waived any such argument by failing to request an evidentiary hearing when the bankruptcy court questioned whether one was necessary.

D. The bankruptcy court did not err in finding grounds for conversion under § 1307(e).

Even assuming, arguendo, that Debtors correctly argue that § 1307(c) must be of secondary import to § 1307(b) given the "may" and "shall" language in them, respectively, their argument fails to negate the alternative basis for conversion under § 1307(e).[7]

Section 1307(e) unambiguously provides that a bankruptcy court "shall" dismiss the case or convert the case to chapter 7 "whichever is in the best interest of the creditors and the estate" if the debtor fails to comply with § 1308 and a party in interest requests dismissal or conversion. Here the bankruptcy court also converted the case based on this statutory mandate.

Under the Debtors' reasoning, such a contest of "shalls" places a bankruptcy court between Scylla and Charybdis—whichever choice it makes risks ruin. Only the holistic approach that allows discretion to the bankruptcy court allows successful navigation between the hazards. In short, even if one concludes that the bankruptcy court's discretion is curtailed in the § 1307(c) context because that subsection utilizes more permissive language than § 1307(b), the same is not true in a situation

---

[7] In fact, Debtors waived any challenge to the bankruptcy court's conversion under § 1307(e) by failing to address it in their opening brief. *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (Appellate courts will not ordinarily consider matters that are not specifically and distinctly argued in an appellant's opening brief).

where § 1307(e) mandates consideration of the interests of creditors.

Here, Debtors inexcusably failed to file multiple tax returns within the time constraints of § 1308(a). While we acknowledge that the Criminal Case required caution and created tensions involving the Fifth Amendment privilege against self-incrimination, the privilege "does not justify a complete failure to file a [tax] return[.]" *United States v. Leidendeker*, 779 F.2d 1417, 1418 (9th Cir. 1986).

Given the mandatory language of § 1307(e), the bankruptcy court was required to consider the interests of creditors. It thoughtfully did so and determined that conversion, and not dismissal, would best serve their interests. And while this deprived Debtors of their late hour attempt to compel dismissal, it gave them, in substance, what the mandatory language of § 1307(b) requires, an immediate exit from chapter 13.

## CONCLUSION

Based on the foregoing, we AFFIRM.